NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**LARGE AUDIENCE DISPLAY SYSTEMS, LLC,**
*Plaintiff-Appellant*

**v.**

**TENNMAN PRODUCTIONS, LLC,
JUSTIN TIMBERLAKE, BRITNEY SPEARS,
SPEARS KING POLE INC.,**
*Defendants-Appellees*

**STEVE DIXON,
MUSIC TOUR MANAGEMENT, INC.,**
*Defendants*

---

2015-2040

---

Appeal from the United States District Court for the Central District of California in No. 2:11-cv-03398-R-RZ, Judge Manuel L. Real.

---

Decided: October 20, 2016

---

MICHAEL G. BURK, The Burk Law Firm, P.C., Austin, TX, for plaintiff-appellant. Also represented by ERIC B. MEYERTONS, Meyertons, Hood, Kivlin, Kowert & Goetzel, P.C., Austin, TX.

ANDREW SOL LANGSAM, Pryor Cashman LLP, New York, NY, for defendants-appellees.

———————————

Before MOORE, LINN, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Large Audience Display Systems, LLC ("LADS") appeals from the district court's order granting a motion for attorney's fees under 35 U.S.C. § 285 filed by Appellees Justin Timberlake, Tennman Productions, LLC, Britney Spears, and Spears King Pole, Inc.[1] (collectively, "Appellees"). We find that certain of the factors relied upon by the district court to find this case to be exceptional were entitled to no weight under § 285. We therefore *vacate* the district court's award of attorney's fees and costs, and *remand* for reconsideration of Appellees' motion.

BACKGROUND

I. The '346 Patent

The United States Patent and Trademark Office ("PTO") issued Patent No. 6,669,346 ("the '346 patent"), the patent at issue in this appeal, on December 30, 2003. The '346 patent describes claims for a "panoramic imaging and display system for the imaging and displaying of visual-media content." '346 patent, at Abstract. The claims generally relate to large-audience, positionable imaging and display systems for the imaging and displaying of visual-media content. *Id.* at col. 1, ll. 12–14. Inven-

———————————

[1] The complaint initially named Britney Touring, Inc. as a Defendant; Spears King Pole, Inc. was later substituted. The complaint also named Los Angeles Lakers, Inc. and Pussycat Dolls, LLC, both of whom were subsequently dismissed from the case.

tor Darrell Metcalf ("Metcalf") assigned the '346 patent to LADS on October 21, 2009.

## II. Procedural History Prior
### to District Court Stay

Although Metcalf is a resident of California, LADS was incorporated in Texas on November 9, 2011. LADS never engaged in any business in Texas or elsewhere, before or after its incorporation. In fact, Metcalf is the sole shareholder of LADS, and no one has ever picked up the keys for the Texas office listed on LADS's Certificate of Incorporation.

On November 11, 2009, LADS sued Appellees for infringement of the '346 patent in the Eastern District of Texas. LADS alleged that Appellees Justin Timberlake and Tennman Productions, LLC infringed the '346 patent through their use of a large-audience display screen during the "FutureSex/LoveShow Tour." J.A. 85, 120. Similarly, LADS alleged that Appellees Spears King Pole, Inc. and Britney Spears's use of a large-audience display screen during the "Circus Tour" infringed the '346 patent. J.A. 86, 121. Specifically, Appellees used a large-scale display system in their concert tours that either drops down from or is fixed to the ceiling. The display system is shaped like a cylinder, so that the audience can see the screen from any direction. The screen is sufficiently large to display a larger image of a performer for an audience who may be seated far away from the actual performer.

In March 2010, Appellees filed an opposed motion to transfer venue to the Central District of California, which the district court granted in March 2011 because it found that the "Central District of California 'is clearly more convenient' than the Eastern District of Texas." *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. 2:09-CV-356-TJW-CE, 2011 WL 1235354, at *6 (E.D. Tex. Mar. 30, 2011).

III.  Reexamination History

Appellees filed an inter partes reexamination request for all asserted claims of the '346 patent on November 11, 2011.  Subsequently, Appellees filed a motion to stay the district court case, pending the outcome of reexamination.  After the PTO granted Appellees' request for reexamination in January 2012 and issued an initial office action invalidating most of the asserted claims of the '346 patent, the district court granted Appellees' motion to stay.

In the reexamination request, Appellees provided the PTO with a television broadcast of the 1996 Olympics opening ceremony, which showed the Temple of Zeus and disclosed a large audience display.  In the January 18, 2012 order granting reexamination, the examiner declined to consider this reference, explaining that the "determination of whether or not to grant inter partes reexamination is based upon prior art patents and/or printed publications," but the submitted television broadcast "is merely a visual presentation."  J.A. 1232.  The examiner also declined to consider a related poster printed in 1996, because the request did not provide any evidence of public dissemination.  J.A. 1233.

In April 2012, Appellees submitted supplemental prior art to the PTO, in the form of printed publications from the 1996 Olympics showing the Temple of Zeus and the large-audience display (the "Olympics Prior Art").  In response to this filing, the examiner issued a notice of defective paper for various reasons, including an issue with the submission of the Olympics Prior Art.  Specifically, the examiner rejected the Olympics Prior Art submission under 37 C.F.R. § 1.948, stating that a third-party requester was only permitted to cite additional prior art to rebut a finding of fact by the examiner or a response of the patent owner, or when additional prior art had become known to the third-party requester only after the filing of the inter partes reexamination request.  The

examiner expunged Appellees' filing, but permitted Appellees to resubmit a revised comment within fifteen days. On May 22, 2012, Appellees resubmitted their revised comment without an information disclosure statement ("IDS").

On July 27, 2012, the PTO issued an action closing prosecution and rejecting all of the asserted claims, except for claim 24. LADS filed its response to the action closing prosecution on August 27, 2012, and submitted the Olympics Prior Art in its IDS without comment on September 14, 2012. The PTO reopened prosecution of the '346 patent on November 26, 2012, in response to its receipt of LADS's IDS. LADS filed its response on January 28, 2013, but it did not discuss the Olympics Prior Art in its IDS. Appellees then filed comments asking the examiner to raise new rejections based on the Olympics Prior Art, but the PTO struck these comments from the record on March 15, 2013. In its reasoning, the PTO noted that the Olympics Prior Art was not considered in the reopening of the Non-Final Action of November 26, 2012, nor in the January 2013 response LADS filed. Hence, the PTO concluded that Appellees' comments did not rebut any findings by the PTO or responses from LADS, and the inclusion of the Olympics Prior Art was therefore considered improper.

Despite rejecting the Olympics Prior Art for a third time, on November 3, 2014, the Patent Trial and Appeal Board ("PTAB") issued a decision affirming the examiner's rejection of original claims 1–6, 9, 10, 13–15, 17, 28 *and 24* of the '346 patent. The examiner cancelled claim 24 in the Examiner's Right of Appeal Notice, as obvious over prior art unrelated to the Olympics Prior Art. J.A. 1494–96. The PTO issued an inter partes reexamination certificate on March 23, 2015, canceling these claims, but added a number of new claims it deemed patentable. The PTO canceled all of the claims asserted in the district court litigation.

IV.  Procedural History Following Reexamination

On April 3, 2015, Appellees moved to dismiss the district court action with prejudice.  LADS opposed the order and, instead, moved to lift the stay, asking for an opportunity to discover information about the infringing devices so that it could assert the new claims against Appellees. On June 16, 2015, the district court lifted the stay *sua sponte* and dismissed the case with prejudice in light of the PTO's final decision to cancel all claims asserted by LADS.

Appellees then filed a motion for recovery of attorney's fees, costs, and expenses in the amount of $755,925.86, under 35 U.S.C. § 285.[2]  To counter Appellees' contention that LADS had brought a wholly meritless lawsuit, LADS included in its opposition an email chain LADS's counsel received from Appellees' counsel on December 15, 2009, which included the following exchange between Appellees and their counsel:

> At this point, without being able to talk to the inventor and blowing holes through the interpretation of the language of the Patent's claims, the position of infringement is not frivolous.

Appellant Br. 40 (quoting J.A. 3749) ("the Langsam email").  LADS's counsel did not notify Appellees' counsel that it had received this message until it cited the Langsam email in its opposition to the attorney's fees motion in 2015.  Ten days later, in their reply brief to this motion, Appellees argued that this email was privileged and inadvertently sent to LADS's counsel.  Appellees furthermore argued that LADS's use of "a privileged communication . . . limited only to the issue of infringement, not

---

[2]  Appellees asserted that they had paid $733,414.34 in attorney's fees and $22,511.52 in costs and expenses, based on LADS's allegedly frivolous suit.

invalidity nor ultimate liability, is in *poor taste, unethical, and wrong*" and "is clear evidence of egregiousness." J.A. 3408 (emphasis in original).

The district court granted Appellees' motion, finding the case "sufficiently extraordinary to warrant an award of attorneys' fees, costs, and expenses." J.A. 3. In support of its determination that the case was exceptional under § 285, the district court made the following factual findings: (i) LADS is "an apparent shell corporation," which "seems to have been formed with the sole intent to create jurisdiction in [the Eastern District of Texas]," (ii) the constructions LADS proposed to the PTO during reexamination "seem disingenuous at the very least," (iii) it "seems that [LADS] prolonged the reexamination process, and consequently this litigation, by refusing to present the [PTO] with additional prior art that, eventually, was dispositive of the claims at issue in this case," (iv) after reexamination, LADS "sought to reopen [this] litigation to engage in discovery to attempt to assert additional claims, despite having had multiple previous opportunities to assert such claims," (v) in opposing the fees motion, LADS "violated clear, important canons of professionalism in proffering clearly privileged information in support of its argument to mitigate or minimize its liability for attorneys' fees," (vi) "it is clear that [LADS] was the driving force behind keeping this litigation and reexamination process alive," and (vii) this lawsuit "appears to have been a frivolous claim." J.A. 3.

The district court awarded Appellees all fees and costs requested, based on its "review of the submitted attorneys' fees and costs and supporting evidence." J.A. 3–4. In its ruling, the district court cited to the lodestar method for calculating attorney's fees, which requires the court to determine the number of reasonable hours billed on the matter and multiply these hours by a reasonable hourly billing rate. J.A. 2–3. But the district court did not calculate fees using the lodestar method; it instead noted

that the requested fees "are in accord with the costs of defending a patent infringement suit as they are lower than the average cost to defend against patent infringement suits in which as little as less than $1 million is at stake, according to a 2013 Report of the Economic Survey." J.A. 4.

LADS timely appealed the district court's award of fees under § 285. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

STANDARD OF REVIEW

A district court "in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An award of attorney's fees under § 285 requires a two-step inquiry. First, a district court must determine whether a case is exceptional. There is no precise rule or formula for making exceptionality determinations, and district courts may determine exceptionality by considering the totality of circumstances, including frivolousness, motivation, objective unreasonableness, and concerns over compensation and deterrence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Second, if a district court finds a case exceptional, it must calculate the amount of the attorney's fees award. "[A] district court usually applies the lodestar method, which provides a presumptively reasonable fee amount . . . by multiplying a reasonable hourly rate by the reasonable number of hours required to litigate a comparable case." *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–52, 554 (2010)).

On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion. *Highmark Inc. v. AllCare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1749 (2014). A district court abuses its discretion when "it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."

*Id.* at 1748 n.2 (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).  Here, we find that the district court based its ruling, to some extent, on both a misunderstanding of what factors are relevant to an exceptionality determination and a clearly erroneous view of the record evidence.  Because those considerations were part of the totality of the circumstances deemed sufficient to justify a finding of exceptionality, we vacate and remand that finding for reconsideration.

DISCUSSION

I. Exceptional Case Determination

First, we agree with LADS that the district court's finding that "[LADS, the plaintiff], an apparent shell corporation, seems to have been formed with the sole intent to create jurisdiction in [the Eastern District of Texas]" was clearly erroneous.  J.A. 3.  Appellees' argument that LADS was formed in the Eastern District of Texas to create jurisdiction is not convincing.  Specific jurisdiction is based on the defendant's contacts with a forum state, not the plaintiff's contacts.  *J. McIntyre Mach., Ltd., v. Nicastro*, 564 U.S. 873, 881 (2011).  Therefore, where LADS was incorporated is irrelevant to where a court may exercise jurisdiction over an action brought by it.  Thus, while the location of LADS might have been relevant to a request for a change of venue under 28 U.S.C § 1404, the formation of LADS in Texas would not affect whether the Eastern District of Texas could assert jurisdiction *over Appellees*.

Second, the district court's finding that LADS's claim "appears to have been . . . frivolous" is clearly erroneous. J.A. 3.  The only evidence Appellees provide in support of this finding is that the PTO canceled the asserted claims in reexamination.  The fact that the PTO canceled the asserted claims after LADS filed its complaint, without more, does not support a finding of frivolousness.  Notably, in a reexamination proceeding, the PTAB gives claims

their broadest reasonable construction—making claims more susceptible to an obviousness rejection than they would be in district court. Next, in reexaminations, the PTAB only considers whether the claims are invalid under a preponderance of the evidence standard; unlike in the district court, no presumption of validity attaches to the claims and the question of validity is not measured by the clear and convincing evidence standard. While the reexamination rejection of asserted claims may be relevant to an assertion of frivolousness in some cases, there is nothing in this case to justify that conclusion.

Third, the record does not support the district court's finding that the Olympics Prior Art was dispositive in the reexamination. At the time LADS submitted the IDSs disclosing the Olympics Prior Art in September 2012, all of the asserted claims other than claim 24 stood rejected by the examiner. While the examiner may have later rejected claim 24 based on a reference disclosed in the September 2012 IDSs, the record does not indicate that the examiner or the PTAB relied on the Olympics Prior Art to reject *any* of the claims. J.A. 3180 ("While such documents were considered by Examiners, such documents were not applied by the Examiners in the Non-Final Action mailed November 26, 2012."). Indeed, Appellees agree that the PTO rejected all of the reexamined claims without relying on the Olympics Prior Art. *See* Resp. Br. 32.

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. But, the circumstances upon which a district court relies must actually exist, and findings that such circumstances do exist must be justified by the record. Here, many of the "circumstances" deemed dispositive by the district court, including but not limited to those noted, supra, either did not occur or were given undue weight. Thus, we must vacate the trial

court's finding of exceptionality and award of fees and costs under § 285. On remand, the district court shall reconsider whether this case was exceptional. The district court may properly consider the totality of the circumstances in making its determination, including LADS's use of the Langsam email to oppose Appellees' motion for attorney's fees, its opposition to the motion to transfer venue to the Central District of California, and the objective reasonableness of LADS's claims given the standards and burdens that apply in district court, including the reasonableness of LADS's proposed claim constructions.[3] But the district court must assure both that the circumstances on which it relies are accurate and that the court affords only the appropriate measure of weight to each.

## II. Calculation of Attorney's Fees

On remand, should the district court find this case to be exceptional, it will reach the issue of calculating reasonable attorney's fees. In exceptional cases, a district court may award an amount of fees that "bear some relation to the extent of the misconduct." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001) (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992)).

The district court acknowledged that, typically, attorney's fee awards are calculated using the lodestar method. J.A. 2–3. Under the lodestar method, the court calculates the attorney's fees by "multiplying the number of hours reasonably expended on the litigation times a reasonable

---

[3] After careful consideration of the claim constructions LADS proposed to the PTAB, we take no issue with the district court's conclusion that the objective weakness of those proposed constructions is a legitimate factor to consider in the court's exceptionality analysis.

hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A reasonable hourly rate should reflect the prevailing market rate. *Id.* at 895. In addition, the court must examine the attorneys' comparable skill, experience, and reputation. *Id.* at 896.

Here, the district court accepted the amount proposed by Appellees as reasonable and awarded the full amount, without performing a lodestar calculation. J.A. 3–4. The district court found this amount to be reasonable because the total amount sought by Appellees was "below average" for typical patent infringement suits in which less than $1 million was at stake, according to a 2013 Report of the Economic Survey. J.A. 4. The average cost of typical patent infringement suits, however, was not the sole evidence upon which the district court should have relied to determine attorney's fees. In addition, the comparison was not appropriate because the survey provided only two benchmarks for average fees: (1) the end of discovery; and (2) through trial. In this case, little discovery had been conducted by the parties, and the case was dismissed with prejudice before trial.

On remand, if the district court finds the case exceptional, it must use the lodestar method to calculate attorney's fees determining the reasonable hours and rates for the lodestar calculation. Though Appellees were represented by attorneys from New York, the litigation occurred in the Central District of California. California fee rates should be used to calculate the lodestar figure unless there is some special expertise Appellees' counsel had that warrants a different rate, or a showing is made that there is a prevailing national rate applicable in patent cases. *See Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1350 (Fed. Cir. 2008) (stating that the forum rate of attorney's fees in Cheyenne, Wyoming, rather than the rate in the District of Columbia, applied to attorneys from the District of Columbia who litigated the case in Cheyenne). In addition, the district court

should determine whether it was reasonable for seven partners to have billed 79 percent of the total hours on this case—almost quadruple the amount billed by associates—for tasks including electronic filing of documents and preparing *pro hac vice* applications. Appellees have not explained why partners worked so extensively on this case, even though twelve associates also billed to the case. It appears, moreover, that at least some of the billing entries were unreasonable, such as an entry for reviewing answers to interrogatories already served, and an entry for reviewing a court decision when the case was stayed for several years.

CONCLUSION

Because the district court abused its discretion in finding this case exceptional on the grounds articulated for the finding, and because the court's fee calculations were not explained sufficiently, we *vacate* the district court's award of fees under § 285 and *remand* for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

No costs.