Justice SOTOMAYOR, dissenting.
Three years ago, the Court imposed substantial curbs on the exercise of general jurisdiction in its decision in Daimler AG v. Bauman, 571 U.S. ----, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). Today, the Court takes its first step toward a similar contraction of specific jurisdiction by holding that a corporation that engages in a nationwide course of conduct cannot be held accountable in a state court by a group of injured people unless all of those people were injured in the forum State.
I fear the consequences of the Court's decision today will be substantial. The majority's rule will make it difficult to aggregate the claims of plaintiffs across the country whose claims may be worth little alone. It will make it impossible to bring a nationwide mass action in state court against defendants who are "at home" in different States. And it will result in piecemeal litigation and the bifurcation of claims. None of this is necessary. A core concern in this Court's personal jurisdiction cases is fairness. And there is nothing unfair about subjecting a massive corporation to suit in a State for a nationwide course of conduct that injures both forum residents and nonresidents alike.
I
Bristol-Myers Squibb is a Fortune 500 pharmaceutical company incorporated in Delaware and headquartered in New York. It employs approximately 25,000 people worldwide and earns annual revenues of over $15 billion. In the late 1990's, Bristol-Myers began to market and sell a prescription blood thinner called Plavix. Plavix was advertised as an effective tool for reducing the risk of blood clotting for those vulnerable to heart attacks and to strokes. The ads worked: At the height of its popularity, Plavix was a blockbuster, earning Bristol-Myers billions of dollars in annual revenues.
Bristol-Myers' advertising and distribution efforts were national in scope. It conducted a single nationwide advertising campaign for Plavix, using television, magazine, and Internet ads to broadcast its message. A consumer in California heard the same advertisement as a consumer in Maine about the benefits of Plavix. Bristol-Myers' distribution of Plavix also proceeded through nationwide channels: Consistent with its usual practice, it relied on a small number of wholesalers to distribute Plavix throughout the country. One of those distributors, McKesson Corporation, was named as a defendant below; during the relevant time period, McKesson was responsible for almost a quarter of Bristol-Myers' revenue worldwide.
The 2005 publication of an article in the New England Journal of Medicine questioning the efficacy and safety of Plavix put Bristol-Myers on the defensive, as consumers around the country began to claim that they were injured by the drug. The plaintiffs in these consolidated cases are 86 people who allege they were injured by Plavix in California and several hundred others who say they were injured by *1785 the drug in other States.[1] They filed their suits in California Superior Court, raising product-liability claims against Bristol-Myers and McKesson. Their claims are "materially identical," as Bristol-Myers concedes. See Brief for Petitioner 4, n. 1. Bristol-Myers acknowledged it was subject to suit in California state court by the residents of that State. But it moved to dismiss the claims brought by the nonresident plaintiffs-respondents here-for lack of jurisdiction. The question here, accordingly, is not whether Bristol-Myers is subject to suit in California on claims that arise out of the design, development, manufacture, marketing, and distribution of Plavix -it is. The question is whether Bristol-Myers is subject to suit in California only on the residents' claims, or whether a state court may also hear the nonresidents' "identical" claims.
II
A
As the majority explains, since our pathmarking opinion in International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the touchstone of the personal-jurisdiction analysis has been the question whether a defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id., at 316, 66 S.Ct. 154 (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ). For decades this Court has considered that question through two different jurisdictional frames: "general" and "specific" jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, nn. 8-9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Under our current case law, a state court may exercise general, or all-purpose, jurisdiction over a defendant corporation only if its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011).[2]
If general jurisdiction is not appropriate, however, a state court can exercise only specific, or case-linked, jurisdiction over a dispute. Id., at 923-924, 131 S.Ct. 2846. Our cases have set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. 4A C. Wright, A. Miller, & A. Steinman, Federal Practice and Procedure § 1069, pp. 22-78 (4th ed. 2015) (Wright); see also id., at 22-27, n. 10 (collecting authority). First, the defendant must have " 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State' " or have purposefully directed its conduct into the forum State. J. McIntyre Machinery, Ltd.
*1786 v. Nicastro, 564 U.S. 873, 877, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (plurality opinion) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ). Second, the plaintiff's claim must "arise out of or relate to" the defendant's forum conduct. Helicopteros, 466 U.S., at 414, 104 S.Ct. 1868. Finally, the exercise of jurisdiction must be reasonable under the circumstances. Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 113-114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The factors relevant to such an analysis include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Id., at 477, 105 S.Ct. 2174 (internal quotation marks omitted).
B
Viewed through this framework, the California courts appropriately exercised specific jurisdiction over respondents' claims.
First, there is no dispute that Bristol-Myers "purposefully avail[ed] itself," Nicastro, 564 U.S., at 877, 131 S.Ct. 2780 of California and its substantial pharmaceutical market. Bristol-Myers employs over 400 people in California and maintains half a dozen facilities in the State engaged in research, development, and policymaking. Ante, at 1777 - 1778. It contracts with a California-based distributor, McKesson, whose sales account for a significant portion of its revenue. Supra, at 1784 - 1785. And it markets and sells its drugs, including Plavix, in California, resulting in total Plavix sales in that State of nearly $1 billion during the period relevant to this suit.
Second, respondents' claims "relate to" Bristol-Myers' in-state conduct. A claim "relates to" a defendant's forum conduct if it has a "connect[ion] with" that conduct. International Shoe, 326 U.S., at 319, 66 S.Ct. 154. So respondents could not, for instance, hale Bristol-Myers into court in California for negligently maintaining the sidewalk outside its New York headquarters-a claim that has no connection to acts Bristol-Myers took in California. But respondents' claims against Bristol-Myers look nothing like such a claim. Respondents' claims against Bristol-Myers concern conduct materially identical to acts the company took in California: its marketing and distribution of Plavix, which it undertook on a nationwide basis in all 50 States. That respondents were allegedly injured by this nationwide course of conduct in Indiana, Oklahoma, and Texas, and not California, does not mean that their claims do not "relate to" the advertising and distribution efforts that Bristol-Myers undertook in that State. All of the plaintiffs-residents and nonresidents alike-allege that they were injured by the same essential acts. Our cases require no connection more direct than that.
Finally, and importantly, there is no serious doubt that the exercise of jurisdiction over the nonresidents' claims is reasonable. Because Bristol-Myers already faces claims that are identical to the nonresidents' claims in this suit, it will not be harmed by having to defend against respondents' claims: Indeed, the alternative approach-litigating those claims in separate suits in as many as 34 different States-would prove far more burdensome. By contrast, the plaintiffs' "interest in obtaining convenient and effective relief," Burger King, 471 U.S., at 477, 105 S.Ct. 2174 (internal quotation marks omitted), *1787 is obviously furthered by participating in a consolidated proceeding in one State under shared counsel, which allows them to minimize costs, share discovery, and maximize recoveries on claims that may be too small to bring on their own. Cf. American Express Co. v. Italian Colors Restaurant, 570 U.S. ----, ----, 133 S.Ct. 2304, 2316, 186 L.Ed.2d 417 (2013) (KAGAN, J., dissenting) ("No rational actor would bring a claim worth tens of thousands of dollars if doing so meant incurring costs in the hundreds of thousands"). California, too, has an interest in providing a forum for mass actions like this one: Permitting the nonresidents to bring suit in California alongside the residents facilitates the efficient adjudication of the residents' claims and allows it to regulate more effectively the conduct of both nonresident corporations like Bristol-Myers and resident ones like McKesson.
Nothing in the Due Process Clause prohibits a California court from hearing respondents' claims-at least not in a case where they are joined to identical claims brought by California residents.
III
Bristol-Myers does not dispute that it has purposefully availed itself of California's markets, nor-remarkably-did it argue below that it would be "unreasonable" for a California court to hear respondents' claims. See 1 Cal.5th 783, 799, n. 2, 206 Cal.Rptr.3d 636, 377 P.3d 874, 885, n. 2 (2016). Instead, Bristol-Myers contends that respondents' claims do not "arise out of or relate to" its California conduct. The majority agrees, explaining that no "adequate link" exists "between the State and the nonresidents' claims," ante, at 1781 - 1782-a result that it says follows from "settled principles [of] specific jurisdiction," ante, at 1780 - 1781. But our precedents do not require this result, and common sense says that it cannot be correct.
A
The majority casts its decision today as compelled by precedent. Ibid. But our cases point in the other direction.
The majority argues at length that the exercise of specific jurisdiction in this case would conflict with our decision in Walden v. Fiore, 571 U.S. ----, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014). That is plainly not true. Walden concerned the requirement that a defendant "purposefully avail" himself of a forum State or "purposefully direc[t]" his conduct toward that State, Nicastro, 564 U.S., at 877, 131 S.Ct. 2780 not the separate requirement that a plaintiff's claim "arise out of or relate to" a defendant's forum contacts. The lower court understood the case that way. See Fiore v. Walden, 688 F.3d 558, 576-582 (C.A.9 2012). The parties understood the case that way. See Brief for Petitioner 17-31, Brief for Respondent 20-44, Brief for United States as Amicus Curiae 12-18, in Walden v. Fiore, O.T. 2013, No. 12-574. And courts and commentators have understood the case that way. See, e.g., 4 Wright § 1067.1, at 388-389. Walden teaches only that a defendant must have purposefully availed itself of the forum, and that a plaintiff cannot rely solely on a defendant's contacts with a forum resident to establish the necessary relationship. See 571 U.S., at ----, 134 S.Ct., at 1122 ("[T]he plaintiff cannot be the only link between the defendant and the forum"). But that holding has nothing to do with the dispute between the parties: Bristol-Myers has purposefully availed itself of California-to the tune of millions of dollars in annual revenue. Only if its language is taken out of context, ante, at 1781 - 1782, can Walden be made to seem relevant to the case at hand.
*1788 By contrast, our decision in Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), suggests that there should be no such barrier to the exercise of jurisdiction here. In Keeton, a New York resident brought suit against an Ohio corporation, a magazine, in New Hampshire for libel. She alleged that the magazine's nationwide course of conduct-its publication of defamatory statements-had injured her in every State, including New Hampshire. This Court unanimously rejected the defendant's argument that it should not be subject to "nationwide damages" when only a small portion of those damages arose in the forum State, id., at 781, 104 S.Ct. 1473 ; exposure to such liability, the Court explained, was the consequence of having "continuously and deliberately exploited the New Hampshire market," ibid. The majority today dismisses Keeton on the ground that the defendant there faced one plaintiff's claim arising out of its nationwide course of conduct, whereas Bristol-Myers faces many more plaintiffs' claims. See ante, at 1782 - 1783. But this is a distinction without a difference: In either case, a defendant will face liability in a single State for a single course of conduct that has impact in many States. Keeton informs us that there is no unfairness in such a result.
The majority's animating concern, in the end, appears to be federalism: "[T]erritorial limitations on the power of the respective States," we are informed, may-and today do-trump even concerns about fairness to the parties. Ante, at 1780. Indeed, the majority appears to concede that this is not, at bottom, a case about fairness but instead a case about power: one in which " 'the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; ... the forum State has a strong interest in applying its law to the controversy; [and] the forum State is the most convenient location for litigation' " but personal jurisdiction still will not lie. Ante, at 1780 - 1781 (quoting World-Wide Volkswagen Corp. v . Woodson, 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ). But I see little reason to apply such a principle in a case brought against a large corporate defendant arising out of its nationwide conduct. What interest could any single State have in adjudicating respondents' claims that the other States do not share? I would measure jurisdiction first and foremost by the yardstick set out in International Shoe -"fair play and substantial justice," 326 U.S., at 316, 66 S.Ct. 154 (internal quotation marks omitted). The majority's opinion casts that settled principle aside.
B
I fear the consequences of the majority's decision today will be substantial. Even absent a rigid requirement that a defendant's in-state conduct must actually cause a plaintiff's claim,[3] the upshot of today's opinion is that plaintiffs cannot join their claims together and sue a defendant in a State in which only some of them have *1789 been injured. That rule is likely to have consequences far beyond this case.
First, and most prominently, the Court's opinion in this case will make it profoundly difficult for plaintiffs who are injured in different States by a defendant's nationwide course of conduct to sue that defendant in a single, consolidated action. The holding of today's opinion is that such an action cannot be brought in a State in which only some plaintiffs were injured. Not to worry, says the majority: The plaintiffs here could have sued Bristol-Myers in New York or Delaware; could "probably" have subdivided their separate claims into 34 lawsuits in the States in which they were injured; and might have been able to bring a single suit in federal court (an "open ... question"). Ante, at 1783 - 1784. Even setting aside the majority's caveats, what is the purpose of such limitations? What interests are served by preventing the consolidation of claims and limiting the forums in which they can be consolidated? The effect of the Court's opinion today is to eliminate nationwide mass actions in any State other than those in which a defendant is " 'essentially at home.' "[4] See Daimler, 571 U.S., at ----, 134 S.Ct., at 754. Such a rule hands one more tool to corporate defendants determined to prevent the aggregation of individual claims, and forces injured plaintiffs to bear the burden of bringing suit in what will often be far flung jurisdictions.
Second, the Court's opinion today may make it impossible to bring certain mass actions at all. After this case, it is difficult to imagine where it might be possible to bring a nationwide mass action against two or more defendants headquartered and incorporated in different States. There will be no State where both defendants are "at home," and so no State in which the suit can proceed. What about a nationwide mass action brought against a defendant not headquartered or incorporated in the United States? Such a defendant is not "at home" in any State. Cf. id., at ---- - --- -, 134 S.Ct., at 772-773 (SOTOMAYOR, J., concurring in judgment). Especially in a world in which defendants are subject to general jurisdiction in only a handful of States, see ibid., the effect of today's opinion will be to curtail-and in some cases eliminate-plaintiffs' ability to hold corporations fully accountable for their nationwide conduct.
The majority chides respondents for conjuring a "parade of horribles," ante, at 1783, but says nothing about how suits like those described here will survive its opinion in this case. The answer is simple: They will not.
* * *
It "does not offend 'traditional notions of fair play and substantial justice,' " International Shoe, 326 U.S., at 316, 66 S.Ct. 154 to permit plaintiffs to aggregate claims arising out of a single nationwide course of conduct in a single suit in a single State where some, but not all, were injured. But that is exactly what the Court holds today is barred by the Due Process Clause.
This is not a rule the Constitution has required before. I respectfully dissent.

Like the parties and the majority, I refer to these people as "residents" and "nonresidents" of California as a convenient shorthand. See ante, at 1778; Brief for Petitioner 4-5, n. 1; Brief for Respondents 2, n. 1. For jurisdictional purposes, the important question is generally (as it is here) where a plaintiff was injured, not where he or she resides.

Respondents do not contend that the California courts would be able to exercise general jurisdiction over Bristol-Myers-a concession that follows directly from this Court's opinion in Daimler AG v. Bauman, 571 U.S. ----, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). As I have explained, I believe the restrictions the Court imposed on general jurisdiction in Daimler were ill advised. See BNSF R. Co. v. Tyrrell, 581 U.S. ----, ----, 137 S.Ct. 1549, --- L.Ed.2d ---- (2017) (SOTOMAYOR, J., concurring in part and dissenting in part); Daimler, 571 U.S., at ----, 134 S.Ct. at 772-773 (SOTOMAYOR, J., concurring in judgment). But I accept respondents' concession, for the purpose of this case, that Bristol-Myers is not subject to general jurisdiction in California.

Bristol-Myers urges such a rule upon us, Brief for Petitioner 14-37, but its adoption would have consequences far beyond those that follow from today's factbound opinion. Among other things, it might call into question whether even a plaintiff injured in a State by an item identical to those sold by a defendant in that State could avail himself of that State's courts to redress his injuries-a result specifically contemplated by World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). See Brief for Civil Procedure Professors as Amici Curiae 14-18; see also J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 906-907, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (GINSBURG, J., dissenting). That question, and others like it, appears to await another case.

The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there. Cf. Devlin v. Scardelletti, 536 U.S. 1, 9-10, 122 S.Ct. 2005, 153 L.Ed.2d 27 (2002) ( "Nonnamed class members ... may be parties for some purposes and not for others"); see also Wood, Adjudicatory Jurisdiction and Class Actions, 62 Ind. L.J. 597, 616-617 (1987).