*877 Justice Kennedy
announced the judgment of the Court and delivered an opinion, in which The ChieF Justice, Justice Scalia, and Justice Thomas join.
. Whether a person or entity is-subject to the jurisdiction of a state court despite not having been present in the State either at the time of suit or at the time of the alleged injury, and despite not having consented to the exercise of jurisdiction, is a question that arises with great frequency in the routine course of litigation. The rules and standards for determining when a State does or does not have jurisdiction over an absent party have been unclear because of decades-old questions left open in Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty., 480 U. S. 102 (1987).
Here, the Supreme Court of New Jersey, relying in part on Asahi, held that New Jersey’s courts can exercise jurisdiction over a foreign manufacturer of a product so long as the manufacturer “knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states." Nicastro v. McIntyre Machinery America, Ltd., 201 N. J. 48, 76, 77, 987 A. 2d 575, 591, 592 (2010). Applying that test, the court concluded that a British manufacturer of scrap metal machines was subject to jurisdiction in New Jersey, even though at no time had it advertised in, sent goods to, or in any relevant sense targeted the State.
That decision cannot be sustained. Although the New Jersey Supreme Court issued an extensive opinion with careful attention to this Court’s cases and to its own precedent, the “stream of commerce” metaphor carried the decision far afield. Due process protects the defendant’s right not to be coerced except by lawful judicial power. As a general rule, the exercise of judicial power is not lawful unless the defendant “purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U. S. 235, 253 (1958). There may be exceptions, say, for instance, *878 in cases involving an intentional tort. But the general rule is applicable in this products-liability case, and the so-called “stream-of-commerce” doctrine cannot displace it.
I
This case arises from a products-liability suit filed in New Jersey state court. Robert Nicastro seriously injured his hand while using a metal-shearing machine manufactured by J. McIntyre Machinery, Ltd. (J. McIntyre). The accident occurred in New Jersey, but the machine was manufactured in England, where J. McIntyre is incorporated and operates. The question here is whether the New Jersey courts have jurisdiction over J. McIntyre, notwithstanding the fact that the company at no time either marketed goods in the State or shipped them there. Nicastro was a plaintiff in the New Jersey trial court and is the respondent here; J. McIntyre was a defendant and is now the petitioner.
At oral argument in this Court, Nicastro’s counsel stressed three primary facts in defense of New Jersey’s assertion of jurisdiction over J. McIntyre. See Tr. of Oral Arg. 29-30.
First, an independent company agreed to sell J. McIntyre’s machines in the United States. J. McIntyre itself did not sell its machines to buyers in this country beyond the U. S. distributor, and there is no allegation that the distributor was under J. McIntyre’s control.
Second, J. McIntyre officials attended annual conventions for the scrap recycling industry to advertise J. McIntyre’s machines alongside the distributor. The conventions took place in various States, but never in New Jersey.
Third, no more than four machines (the record suggests only one, see App. to Pet. for Cert. 130a), including the machine that caused the injuries that are the basis for this suit, ended up in New Jersey.
In addition to these facts emphasized by respondent, the New Jersey Supreme Court noted that J. Melntyre held both United States and European patents on its recycling technol *879 ogy. 201 N. J., at 55, 987 A. 2d, at 579. It also noted that the U. S. distributor “structured [its] advertising and sales efforts in accordance with” J. McIntyre’s “direction and guidance whenever possible,” and that “at least some of the machines were sold on consignment to” the distributor. Id., at 55, 56, 987 A. 2d, at 579 (internal quotation marks omitted).
In light of these facts, the New Jersey Supreme Court concluded that New Jersey courts could exercise jurisdiction over petitioner without contravention of the Due Process Clause. Jurisdiction was proper, in that court’s view, because the injury occurred in New Jersey; because petitioner knew or reasonably should have known “that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states”; and because petitioner failed to “take some reasonable step to prevent the distribution of its products in this State.” Id., at 77, 987 A. 2d, at 592.
Both the New Jersey Supreme Court’s holding and its account of what it called “[t]he stream-of-commerce doctrine of jurisdiction,” id., at 80, 987 A. 2d, at 594, were incorrect, however. This Court’s Asahi decision may be responsible in part for that court’s error regarding the stream of commerce, and this case presents an opportunity to provide greater clarity.
II
The Due process Clause protects an individual’s right to be deprived of life, liberty, or property only by the exercise of lawful power. Cf. Giaccio v. Pennsylvania, 882 U. S. 399, 403 (1966) (The Clause “protect[s] a person against having the Government impose burdens upon him except in accordance with the valid laws of the land”). This is no less true with respect to the power of a sovereign to resolve disputes through judicial process than with respect to the power of a sovereign to prescribe rules of conduct for those within its sphere. See Steel Co. v. Citizens for Better Environment, 523 U. S. 83, 94 (1998) (“ ‘Jurisdiction is power to declare the *880 law’ ”). As a general rule, neither statute nor judicial decree may bind strangers to the State. Cf. Burnham v. Superior Court of Cal., County of Marin, 495 U. S. 604, 608-609 (1990) (opinion of Scalia, J.) (invoking “the phrase coram non judice, ‘before a person not a judge’ — meaning, in effect, that the proceeding in question was not a judicial proceeding because lawful judicial authority was not present, and could therefore not yield a judgment”).
A court may subject a defendant to judgment only when the defendant has sufficient contacts with the sovereign “such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’” International Shoe Co. v. Washington, 826 U. S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U. S. 457, 463 (1940)). Free-form notions of fundamental fairness divorced from traditional practice cannot transform a judgment rendered in the absence of authority into law. As a general rule, the sovereign’s exercise of power requires some act by which the defendant “purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,” Hanson, 357 U. S., at 253, though in some cases, as with an intentional tort, the defendant might well fall within the State’s authority by reason of his attempt to obstruct its laws. In products-liability cases like this one, it is the defendant’s purposeful availment that makes jurisdiction consistent with “traditional notions of fair play and substantial justice.”
A person may submit to a State’s authority in a number of ways. There is, of course, explicit consent. E.g., Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U. S. 694, 703 (1982). Presence within a State at the time suit commences through service of process is another example. See Burnham, supra. Citizenship or domicile or, by analogy, incorporation or principal place of business for corporations — also indicates general submission to a State’s powers. Goodyear Dunlop Tires Operations, S. A. *881 v. Brown, post, p. 915. Each of these examples reveals circumstances, or a course of conduct, from which it is proper to infer an intention to benefit from and thus an intention to submit to the laws of the forum State. Cf. Burger King Corp. v. Rudzewicz, 471 U. S. 462, 476 (1985). These examples support exercise of the general jurisdiction of the State’s courts and allow the State to resolve both matters that originate within the State and those based on activities and events elsewhere. Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U. S. 408, 414, and n. 9 (1984). By contrast, those who live or operate primarily outside a State have a due process right not to be subjected to judgment iu its courts as a general matter.
There is also a more limited form of submission to a State’s authority for disputes that “arise out of or are connected with the activities within the state.” International Shoe Co., supra, at 319. Where a defendant “purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,” Hanson, supra, at 253, it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant’s activities touching on the State. In other words, submission through contact with and activity directed at a sovereign may justify specific jurisdiction “in a suit arising out of or related to the defendant’s contacts with the forum.” Helicopteros, supra, at 414, n. 8; see also Goodyear, post, at 919.
The imprecision arising from Asahi, for the most part, results from its statement of the relation between jurisdiction and the “stream of commerce.” The stream of commerce, like other metaphors, has its deficiencies as well as its utility. It refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact. This Court has stated that a defendant’s placing goods into the stream of commerce “with the expectation that they will be purchased *882 by consumers in the forum State” may indicate purposeful availment. World-Wide Volkswagen Corp. v. Woodson, 444 U. S. 286, 298 (1980) (finding that expectation lacking). But that statement does not amend the general rule of personal jurisdiction. It merely observes that a defendant may in an appropriate case be subject to jurisdiction without entering the forum — itself an unexceptional proposition — as where manufacturers or distributors “seek to serve” a given State’s market. Id., at 295. The principal inquiry in cases of this sort is whether the defendant’s activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must “purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson, supra, at 253; Insurance Corp., supra, at 704-705 (“[Ajctions of the defendant may amount to a legal submission to the jurisdiction of the court”). Sometimes a defendant does so by sending its goods rather than its agents. The defendant’s transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State.
In Asahi, an opinion by Justice Brennan for four Justices outlined a different approach. It discarded the central concept of sovereign authority in favor of considerations of fairness and foreseeability. As that concurrence contended, “jurisdiction premised on the placement of a product into the stream of commerce [without more] is consistent with the Due Process Clause,” for “[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.” 480 U. S., at 117 (opinion concurring in part and concurring in judgment). It was the premise of the concurring opinion that the defendant’s ability to anticipate suit renders the assertion of jurisdiction fair. In *883 this way, the opinion made foreseeability the touchstone of jurisdiction.
The standard set forth in Justice Brennan’s concurrence was rejected in an opinion written by Justice O’Connor; but the relevant part of that opinion-, too, commanded the assent of only four Justices, not a majority of the Court. That opinion stated: “The 'substantial connection’ between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant pur - posefully directed toward the forum State. The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.” Id., at 112 (emphasis deleted; citations omitted).
Since Asahi was decided, the courts have sought to reconcile the competing opinions. But Justice Brennan’s concurrence, advocating a rule based on general notions of fairness and foreseeability, is inconsistent with the premises of lawful judicial power. This Court’s precedents make clear that it is the defendant’s actions, not his expectations, that empower a State’s courts to subject him to judgment.
The conclusion that jurisdiction is in the first instance a question of authority rather than fairness explains, for example, why the principal opinion in Burnham “conducted no independent inquiry into the desirability or fairness” of the rule that service of process within a State suffices to establish jurisdiction over an otherwise foreign defendant. 495 U. S., at 621 (opinion of Scalia, J.). As that opinion explained, “[t]he view developed early that each State had the power to hale before its courts any individual who could be found within its borders.” Id., at 610. Furthermore, were general fairness considerations the touchstone of jurisdiction, a lack of purposeful availment might be excused where carefully crafted judicial procedures could otherwise protect the defendant’s interests, or where the plaintiff would suffer substantial hardship if forced to litigate in a foreign forum. *884 That such considerations have not been deemed controlling is instructive. See, e.g., World-Wide Volkswagen, supra, at 294.
Two principles are implicit in the foregoing. First, personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct. Personal jurisdiction, of course, restricts “judicial power not as a matter of sovereignty, but as a matter of individual liberty,” for due process protects the individual’s right to be subject only to lawful power. Insurance Corp., 456 U. S., at 702. But whether a judicial judgment is lawful depends on whether the sovereign has authority to render it.
The second principle is a corollary of the first. Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State. This is consistent with the premises and unique genius of our Constitution. Ours is “a legal system unprecedented in form and design, establishing two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it.” U. S. Term Limits, Inc. v. Thornton, 514 U. S. 779, 838 (1995) (Kennedy, J., concurring). For jurisdiction, a litigant may have the requisite relationship with the United States Government but not with the government of any individual State. That would be an exceptional case, however. If the defendant is a domestic domiciliary, the courts of its home State are available and can exercise general jurisdiction. And if another State were to assert jurisdiction in an inappropriate ease, it would upset the federal balance, which posits that each State has a sovereignty that is not subject to unlawful intrusion by other States. Fur *885 thermore, foreign corporations will often target or concentrate on particular States, subjecting them to specific jurisdiction in those forums.
It must be remembered, however, that although this case and Asahi both involve foreign manufacturers, the undesirable consequences of Justice Brennan’s approach are no less significant for domestic producers. The owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the country. If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States’ courts without ever leaving town. And the issue of foreseeability may itself be contested so that significant expenses are incurred just on the preliminary issue of jurisdiction. Jurisdictional rules should avoid these costs whenever possible.
The conclusion that the authority to subject a defendant to judgment depends on purposeful availment, consistent with Justice O’Connor’s opinion in Asahi, does not by itself resolve many difficult questions of jurisdiction that wall arise in particular cases. The defendant’s conduct and the economic realities of the market the defendant seeks to serve will differ across cases, and judicial exposition will, in common-law fashion, clarify the contours of that principle.
HH f — Í h — i
In this case, petitioner directed marketing and sales efforts at the United States. It may be that, assuming it were otherwise empowered to legislate on the subject, the Congress could authorize the exercise of jurisdiction in appropriate courts. That circumstance is not presented in this case, however, and it is neither necessary nor appropriate to address here any constitutional concerns that might be attendant to that exercise of power. See Asahi, 480 U. S., at 113, n. Nor is it necessary to determine what substantive law might apply were Congress to authorize jurisdiction in *886 a federal court in New Jersey. See Hanson, 357 U. S., at 254 (“The issue is personal jurisdiction, not choice of law”). A sovereign’s legislative authority to regulate conduct may present considerations different from those presented by its authority to subject a defendant to judgment in its courts. Here the question concerns the authority of a New Jersey state court to exercise jurisdiction, so it is petitioner’s purposeful contacts with New Jersey, not with the United States, that alone are relevant.
Respondent has not established that J. McIntyre engaged in conduct purposefully directed at New Jersey. Recall that respondent’s claim of jurisdiction centers on three facts: The distributor agreed to sell J. McIntyre’s machines in the United States; J. McIntyre officials attended trade shows in several States but not in New Jersey; and up to four machines ended up in New Jersey. The British manufacturer had no office in New Jersey; it neither paid taxes nor owned property there; and it neither advertised in, nor sent any employees to, the State. Indeed, after discovery the trial court found that the “defendant does not have a single contact with New Jersey short of the machine in question ending up in this state.” App. to Pet. for Cert. 130a. These facts may reveal an intent to serve the U. S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market.
It is notable that the New Jersey Supreme Court appears to agree, for it could “not find that J. McIntyre had a presence or minimum contacts in this State — in any jurisprudential sense — that would justify a New Jersey court to exercise jurisdiction in this case.” 201 N. J, at 61, 987 A. 2d, at 582. The court nonetheless held that petitioner could be sued in New Jersey based on a “stream-of-eommerce theory of jurisdiction.” Ibid. As discussed, however, the stream-of-commerce metaphor cannot supersede either the mandate of the Due Process Clause or the limits on judicial authority that Clause ensures. The New Jersey Supreme Court also *887 cited “significant policy reasons” to justify its holding, including the State’s “strong interest in protecting its citizens from defective products.”. Id., at 75, 987 A. 2d, at 590. That interest is doubtless strong, but the Constitution commands restraint before discarding liberty in the name of expediency.
* * *
Due process protects petitioner’s right to be subject only to lawful authority. At no time did petitioner engage in any activities in New Jersey that reveal an intent to invoke or benefit from the protection of its laws. New Jersey is without power to adjudge the rights and liabilities of J. McIntyre, and its exercise of jurisdiction would violate due process. The contrary judgment of the New Jersey Supreme Court is

Reversed.