KENNEDY, Judge (concurring in part and dissenting in part). I agree that there is no general jurisdiction to be exercised with regard to Joy Co. I respectfully disagree with the Majority that New Mexico has specific jurisdiction to entertain this indemnity claim. I believe the Opinion’s liberal approach is excessively broad. Placing goods in the worldwide stream of commerce, together with a general awareness that products delivered to distributors elsewhere might land in New Mexico, should not suffice for “purposeful availment” of the benefits and protections of New Mexico’s legal system. I am not satisfied that such an approach possesses the degree of certainty and predictability to reliably establish a manufacturer’s relationship with New Mexico as a foreign state. I would use a test requiring behavior on Joy Co.’s part that was more demonstrably “purposefully directed” at New Mexico by Joy Co. and not just an artifact of Joy Co. being at the front end of a convoluted distribution chain that brought a bicycle part to our state. SeeAsahi, 480 U.S. at 112. The focus should be on Joy Co.’s actions in their business that are directed toward New Mexico, not a nebulous post hoc imputation of their expectations deriving from where their product might turn up. The Opinion’s selective approach to specific jurisdiction adopts Justice Brennan’s solo dissent in World-Wide Volkswagen, where his opinion loosed more limited and amorphous criteria for jurisdiction that “the litigation is connected to the forum, the defendant is linked to the forum, and the burden of defending is not unreasonable,” 444 U.S. at 302. There, Justice Brennan rejected any consideration of how a distribution chain might operate to bring goods into the state, or whether goods arrived at the end of a long distribution chain over which no control might be exerted by the manufacturer. Rather, he opined that no more need be required of a defendant than“[i]n each case the seller purposefully injects the goods into the stream of commerce and those goods predictably are used in the forum [s]tate.” 444 U.S. at 307. The standard enunciated by Justice O’Connor in Asahi is one I believe to be very much alive and requires a showing that Joy Co. also “purposefully availfed] itself of the privilege of conducting activities within the forum [sjtate” and, thereby, “invoke[edj the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253 (1958). This is not a products liability case against Joy Co. It is a claim by a bicycle store for indemnity from the maker of a bicycle component that may have failed in a fifteen-year-old bicycle. A court may exercise specific jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there, and (2) the controversy arises out of or is related to the defendant’s contacts with the forum state. Helicópteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The arrival of Joy Co’s bicycle part in New Mexico was an incidental contact with New Mexico and insufficiently purposeful to justify invoking our specific jurisdiction. Last year, the United States Supreme Court once again visited this cratered battlefield of plurality jurisprudence and managed to forge an agreement between six justices as to two propositions that are applicable here. J. McIntyre Mach.,___U.S. ___, 131 S. Ct. 2780. First, the stream of commerce notion alone, even to the extent that it is employed to paint a satisfying gloss of foreseeability on the arrival of a product within a particular jurisdiction, is not enough to sufficiently protect the due process right of Joy Co. “not to be coerced except by lawful judicial power.” Id. at___, 131 S. Ct. at 2785. This requires “some act” of Joy Co., by which it availed itself of the privilege of conducting activities within the forum state that invokes the benefits and protections of its laws. See id. at___, 131 S. Ct. at 2787. A specific effort to sell in the forum state, purposeful availment of the privilege of doing business in the forum state and the expectation that one’s goods will be purchased in the forum state constitute the points of agreement in which the plurality’s opinion was joined by the two concurring justices, giving a six-justice majority to the inapplicability of mere stream of commerce and foreseeability as sufficient to confer special jurisdiction. Id. at ___, 131 S. Ct. at 2792. This is not the loose approach taken by the Opinion in this case that conflates foreseeability with expectation and then availment. It also does not allow for the conflation of Joy Co. seeking to serve the United States market with purposeful intent to reach the New Mexico consumer. Such a view of an intent to reach the consumer is not the test we should use, but rather we should look to purposeful intent to utilize the benefits and protections of the forum upon which the Opinion should focus. It is specifically this relationship with the forum that requires the application of due process, and purposeful availment requires an act by Joy Co. “purposefully directed toward the forum [sjtate” and not merely an awareness or an intentionborn ofusing nationwide distribution networks. Asahi, 480 U.S. at 112. In Hanson, that involved acting so as to gain the “privilege of conducting activities within the forum [sjtate, thus invoking the benefits and protections of its laws.” 357 U.S. at 253. In this case, Joy Co. has not purposefully pursued its contacts with New Mexico in a way that it might benefit from the protection of our laws, but rather the other way around. A New Mexico entity seeks to use New Mexico law for its own benefit and protection. Both the plurality and Justice Breyer’s concurrence rejected the notion that a desire for an American distributor to sell its product to any willing customer in the United States, and participation in trade shows were facts that adequately supported finding minimum contacts between a manufacturer and a state. J. McIntyre Mach.,_U.S. at ___, 131 S. Ct. at 2790-91. Joy Co. has no representatives in New Mexico, and none of its products reach our state save through a Denver distributor, or through the inclusion of its parts by bicycle manufacturers who avail themselves of downstream distributors. R&C’s manager never established that he has ever independently ordered a Joy Co. component through the Denver distributor for sale in New Mexico, and no direct sale from Joy Co.’s representative in California was documented. Justice Stevens’ concurrence in Asahi evidenced no more than an inclination that the minimum contacts part of the test had been satisfied, but usefully outlined some circumstances echoed later in J. McIntyre Machinery that could be relevant to determining a company’s contacts with the forum state, including the volume of sales, the value of the goods, and the hazardous character of the components. Asahi, 480 U.S. at 122; J. McIntyre Mach.,___U.S. at___, 131 S. Ct. at 2790, 2793. Here, the value and volume of sales seems minimal, and the items are not inherently dangerous so as to anticipate their causing injury. Viewing a worldwide pool of commercial transactions so as to confer upon every manufacturer a specific intention to do business within every jurisdiction, and moreover impute a corporate anticipation of being haled into the courts of New Mexico as a result is a siren’s call I believe more sensible jurisprudence requires me to reject. The Majority and I do not agree that Asahi and later cases, such as J. McIntyre Machinery, owing to their multiple pluralities of opinion, have limited relevance to this situation. I believe that World-Wide Volkswagen has indeed evolved to provide a more sophisticated view of specific jurisdiction that would support affirming the district court in this case. With the frequent reliance placed on Asahi by the majority opinion to glean selected precepts, the broader view of development through J. McIntyre Machinery is one I find more satisfying to resolve the jurisdictional question posed by this case. Hence, I believe that Joy Co.’s connection with New Mexico is too attenuated to support specific jurisdiction, requiring some additional factor or act on Joy Co.’s part than simply having a marketable item in the “stream of commerce” and an imputed awareness that it would arrive in New Mexico is a better standard. I view Justice Breyer’s concurrence in J. McIntyre Machinery as quite explicit in rejecting any jurisdiction based on no more than a producer being subject to jurisdiction “so long as it knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.”__U.S. at__, 131 S. Ct. at 2785. His precise reasoning was that, to adopt such a stream of commerce approach, would be to ignore “the relationship between the defendant, the forum, and the litigation.” Id. at_, 131 S. Ct. at 2793. In a case such as this, where the distribution chain seems to begin with Joy Co.’s contacts outside of the United States and no direct line between Joy Co. and New Mexico exists, I would not take jurisdiction based on little more than their part showing up in a bicycle fifteen years ago. I respectfully dissent. RODERICK T. KENNEDY, Judge