DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**CAREFIRST OF MARYLAND, INC.,**
Appellant,

v.

**RECOVERY VILLAGE AT UMATILLA, LLC.,** et al.,
Appellees.

No. 4D17-2247

[May 23, 2018]

Appeal of non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Jack B. Tuter, Judge; L.T. Case No. 15 008975 CACE (07).

Daniel L. Wallach of Becker & Poliakoff, Fort Lauderdale, Patrick de Gravelles, Washington, DC, and Anthony F. Shelley of Miller & Chevalier Chartered, Washington, DC, for appellant.

Glenn J. Waldman of Waldman Trigoboff Hildebrandt & Calnan, P.A., Fort Lauderdale, for appellees.

MAY, J.

Personal jurisdiction is contested in this appeal from an order denying a motion to dismiss a second amended complaint. Appellant Carefirst ("the defendant") argues the trial court erred in finding specific personal jurisdiction over it. We agree and reverse.

The defendant is a Maryland-based insurance company that sells health insurance policies to Maryland residents and Maryland companies that may have employees outside of Maryland. It is a licensee of Blue Cross and participates in the Blue Card Program, which allows members to receive treatment nationwide while allowing the defendant to charge the in-state discounted rates that Blue Cross uses in that state. *See St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, No. H-08-1870, 2009 WL 47125, *7 (S.D. Tex. Jan. 6, 2009). It also offers plans with out-of-network benefits at higher premiums.

The defendant does not own property in Florida, maintains no office in Florida, and does not advertise in the state. But, its customers can access a list of Florida providers on their website that directs them to Blue Cross's National Doctor and Hospital Finder through a link to the defendant as a licensee.

The defendant contracts with Florida Blue for Florida Blue to pay the health care providers, such as the plaintiff, a scheduled price determined by Florida Blue through the Blue Card program. The defendant then reimburses Florida Blue for paying the provider on its behalf. Appellee Recovery Village ("the plaintiff") is unable to contract directly with the defendant; it must contract with Florida Blue. The plaintiff is not in the Florida Blue network and allegedly did not agree to accept anything less than the full price for its services.

Between January 2014 and the present, eight of the defendant's members (all residents of Maryland) received treatment from the plaintiff, a Florida-based substance abuse and eating disorder facility. The plaintiff alleges that before providing services to the defendant's members, it contacted the defendant to verify their eligibility under their respective insurance policies. The defendant, or its agent, Magellan Healthcare, preauthorized treatment for three members.

The parties disagree about how the contact happened. The defendant argues the system is almost completely automated, and it is unlikely that any "person" approved the treatment. The plaintiff claims that it called the defendant multiple times for each member to get approval at various stages of treatment. The plaintiff also alleges the defendant initiated phone calls to it on several occasions.

In May 2015, the plaintiff filed suit against numerous defendants participating in the Blue Card Program, including the defendant, for underpayment on contracts. In February 2016, the plaintiff filed its first amended complaint for: (1) breach of express contract; (2) breach of implied-in-fact contract; (3) breach of implied-in-law contract; and (4) civil conspiracy.

The defendant moved to dismiss, arguing the first amended complaint did not allege sufficient grounds for specific personal jurisdiction. The trial court granted the defendant's motion. The court indicated the motion and appended affidavit were sufficient to rebut the plaintiff's prima facie jurisdictional claim.

The plaintiff then filed a second amended complaint, adding a

description of the relationship between the defendant and Florida Blue that allegedly constituted minimum contacts sufficient to establish specific jurisdiction. The added allegations outlined the above-described relationship. It also alleged the defendant determined the amount of Florida Blue's payment to providers.

The defendant again moved to dismiss. It attached affidavits refuting that it intentionally advertised in Florida through its website and that it had control over what Florida Blue pays the plaintiff. The plaintiff responded and appended affidavits to rebut the defendant's affidavits.

The plaintiff's affiant attested that the defendant contracts with the plaintiff by preauthorizing treatment either directly or through its agent, Magellan. The plaintiff contacts the defendant for approval at each stage of patient care. He attested that treatment would not have been possible if the defendant had not preauthorized and approved treatment. He also attested the defendant advertised in Florida through its website, which links to Blue Cross's National Doctor and Hospital Finder website.

After a limited evidentiary hearing on the conflicting affidavits, the trial court denied the defendant's motion. It found the plaintiff had successfully established specific jurisdiction. The defendant now appeals.[1]

It argues: (1) the trial court used the wrong analysis for personal jurisdiction; (2) it was the plaintiff, not the defendant, that intentionally established contact; and (3) it would be unreasonable to exercise jurisdiction over the defendant for its insured's "fortuitous" choice to obtain services in Florida.

We have de novo review of an order denying a motion to dismiss for lack of personal jurisdiction. *Hamilton v. Hamilton*, 142 So. 3d 969, 971 (Fla. 4th DCA 2014).

To find that an out-of-state defendant is subject to specific personal jurisdiction, a court must determine that the defendant is subject to Florida's long-arm statute and has sufficient minimum contacts with the state to satisfy the Fourteenth Amendment's due process requirements. *Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012). Here, the defendant concedes application of the long-arm statute, and restricts its argument to

---

[1] The defendant challenged long-arm jurisdiction for the conspiracy claim, but the plaintiff indicated in its answer brief that it would be dismissing the conspiracy claim, mooting that portion of the appeal.

the defendant's lack of minimum contacts to satisfy due process.

First, the defendant argues the trial court used the wrong test in evaluating the existence of minimum contacts. It suggests the trial court relied on whether the defendant could "foresee" being hauled into court in Florida, rather than whether it purposefully availed itself of the benefits of Florida law through action directed at the forum state. Next, it argues that even if the trial court had applied the correct test, it incorrectly found the defendant had sufficient minimum contacts with Florida based on the facts of the case.[2]

The plaintiff responds that the trial court used the correct test in evaluating minimum contacts. It maintains that, using that test, the trial court correctly found sufficient minimum contacts to allow Florida to have specific jurisdiction over the defendant.

The foreseeability test has consistently been rejected by the United States Supreme Court. *See, e.g.*, *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*, 137 S. Ct. 1773 (2017); *Walden v. Fiore*, 134 S. Ct. 1115 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). And, both parties seem to agree on one thing: purposeful availment of the benefits of Florida law through action directed at Florida is the correct test to apply. That being said, they do not agree on whether the facts support the existence of minimum contacts under that test.

Our supreme court has held there is no specific jurisdiction where an insurer—offering national coverage—and an insured are residents of a foreign state and the insurer's only contact with Florida is a result of the insured's unilateral actions—getting into an accident in Florida. *Meyer v. Auto Club Ins. Ass'n*, 492 So. 2d 1314, 1315 (Fla. 1986).

In *Meyer*, the insurer offered national coverage to its customers, but did not directly reach out to Florida nor did it direct its customers to Florida. *Id.*; *cf. Dollar Sys., Inc. v. Elvia*, 863 So. 2d 378, 380-81 (Fla. 4th DCA 2003) (distinguishing *Meyer* from a foreign insurance company that provided insurance for tourists vacationing in Florida, and finding specific jurisdiction in the latter).

---

[2] The defendant also argues the trial court found personal jurisdiction because it advertised as a national network. While the court discussed the defendant's national scope, it ultimately decided "[the defendant] could reasonably anticipate being [hauled] into a Florida court . . . as a result of its members receiving treatment from [the plaintiff] that was preauthorized by [the defendant]."

Here, the defendant's website linked to Blue Cross's website, which directed patients to Florida providers. But, the plaintiff was not a listed provider in Blue Cross's network. And, neither the defendant nor anyone on its behalf directed the patient to the plaintiff provider.

"The unilateral activity of those who claim a relationship with a nonresident defendant cannot satisfy the requirement of [the nonresident's] contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). There must "be some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State[.]" *Id.* "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (citations omitted).

Here, the defendant's contact with the plaintiff was based on its customers' unilateral decision to seek treatment in Florida. Correspondence with out-of-state providers resulting from a customer's unilateral move is not enough to establish specific jurisdiction over a foreign defendant-insurer. *See, e.g.*, *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1201 (D. Kan. 2000) ("[An Ohio insurance company] sending payment, notice of nonpayment, and other communications into Kansas, as a result of plaintiff's move to Kansas, are not legally sufficient to establish specific jurisdiction.").

The trial court relied on *Blue Cross and Blue Shield of Del. v. Nat'l Alcoholism Programs/Cooper City, Fla., Inc.*, 648 So. 2d 231 (Fla. 4th DCA 1994) ("*Blue Cross*"), in discussing the defendant's pre-certification and payments to the plaintiff as a basis for finding minimum contacts. Significantly, the holding in *Blue Cross* was limited to the need for an evidentiary hearing when conflicting affidavits are filed. *Id.* at 234. And, in that case, the out-of-state patient's in-network doctor "referred the patient" to the Florida provider, and Blue Cross directed a Florida corporation to pre-certify the patient's treatment. *Id.* at 232-33. The provider in *Blue Cross* was an in-network provider. *Id.*

Here, the trial court conducted the requisite evidentiary hearing. Neither the defendant nor anyone connected to the defendant referred the patient to the plaintiff, and the defendant did not direct the plaintiff to get pre-certification from a Florida corporation. Unlike the provider in *Blue Cross*, the plaintiff does not participate in Blue Cross's network.

Nevertheless, the plaintiff depicts Florida Blue as the defendant's Florida agent and claims their relationship is enough to support personal jurisdiction. But, the defendant's relationship is closer to that of the insurer in *Whittaker*, 96 F. Supp. 2d at 1201 (providing that the Ohio insurer used Blue Cross of Kansas to process claims of one of its Ohio customers who had moved to Kansas). There, the court held the foreign jurisdiction lacked jurisdiction over the out-of-state insurer.

The trial court erred in finding specific personal jurisdiction over the defendant under the facts of this case. We therefore reverse and remand to the trial court to dismiss the case against the defendant for lack of personal jurisdiction.

*Reversed and remanded.*

WARNER and FORST, JJ., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

6