The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: December 18, 2025

**No. A-1-CA-42334**

**INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB,**

     Plaintiff,

v.

**GILBRALTAR INDUSTRIES, INC.,**

     Defendant,

and

**AIR VENT, INC.,**

     Defendant/Cross-Claimant-Appellant,

v.

**POWERMAX ELECTRIC CO., LTD, GUANGDONG,**

     Cross-Defendant-Appellee,

and

**KING OF FANS, INC.; DM (ASIA) LIMITED; and DOES 1 TO 10,**

     Cross-Defendants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Court Judge**

Conklin, Woodcock, Ziegler & Hazlett, P.C.
John K. Ziegler
Taylor F. Hartstein
Albuquerque, NM

for Appellant

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Judy C. Selmeci
New York, NY

Coleman Proctor
Dallas, TX

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}  Appellant Air Vent, Inc. (AVI) appeals the district court's dismissal of their cross-claims against Appellee Powermax Electric Co., Ltd., Guangdong (Powermax). Both AVI and Powermax are defendants in a products liability lawsuit regarding a defective fan motor that allegedly led to a house fire in Albuquerque, New Mexico. AVI argues that Powermax, a Chinese company, established sufficient minimum contacts with New Mexico to allow the district court to exercise specific personal jurisdiction. Agreeing, we reverse and remand.

**BACKGROUND**

{2}  In 2021, plaintiff Interinsurance Exchange of the Automobile Club, an insurance carrier, filed a complaint on behalf of its insured, claiming damages from a house fire caused by a defective ventilation fan allegedly designed, manufactured, assembled, marketed, distributed, or sold by several defendants, including Powermax and AVI. A couple months later, AVI filed cross-claims against Powermax, alleging that to the extent that plaintiff insurance carrier was able to prove that the fan in question was an AVI product and that it was defective, any alleged defect would have arisen solely from the fan motor, which was designed, manufactured, and supplied by Powermax. In 2023, Powermax moved to dismiss AVI's cross-claims for lack of personal jurisdiction. Last year, the district court

granted the motion. AVI appeals, arguing that it had presented a prima facie case that personal jurisdiction may be asserted over Powermax in New Mexico.

{3}     In support of its argument, AVI contends that Powermax purposefully availed itself of the New Mexico market through placing its products into a nationwide stream of commerce. In the district court and now on appeal, AVI specifically alleges the following: (1) Powermax sold fan motors to intermediaries in the United States; (2) Powermax itself shipped its fan motors from China directly to AVI through U.S. ports, though some of its sales were arranged through a third-party customer known as Direct Marketing Asia, Ltd.; (3) Powermax has a joint venture relationship with Florida-based supplier, King of Fans; (4) Powermax's website states that Powermax has an "important status in . . . American markets"; (5) Powermax's website lists a U.S. phone number; (6) Powermax maintains worldwide insurance coverage; (7) Powermax's products are designed to comply with U.S. safety standards; (8) Powermax sold 99 percent of its products in the United States through stores including Home Depot, Lowe's, Grainger, Harbor Freight, and Wal-Mart; and (9) Powermax sold 2.8 million electric fan motors to AVI during the at-issue time period. To determine whether the district court was correct to grant Powermax's motion to dismiss, we examine the legal landscape that governs personal jurisdiction in New Mexico. We then explain the proffered law and consider the allegations in determining whether Powermax is subject to personal jurisdiction in New Mexico.

**DISCUSSION**

{4}     Whether a party "is subject to specific personal jurisdiction in New Mexico courts is a question of law we review de novo." *Chavez v. Bridgestone Americas Tire Operations, LLC*, 2023-NMCA-022, ¶ 6, 527 P.3d 652. "Further, where, as here, the district court base[d] its ruling on the parties' pleadings, attachments, and non[]evidentiary hearings, we construe those pleadings and affidavits in the light most favorable to the complainant." *Id.* (alterations, internal quotation marks, and citation omitted). "We construe the pleadings and affidavits in the light most favorable to the complainant, and the complainant need only make a prima facie showing that personal jurisdiction exists." *Sproul v. Rob & Charlies, Inc.*, 2013-NMCA-072, ¶ 6, 304 P.3d 18 (internal quotation marks and citation omitted).

{5}     New Mexico courts "may exercise specific personal jurisdiction over a nonresident defendant if that defendant purposefully availed itself of the privilege of conducting activities within [New Mexico], thus invoking the benefits and protections of its laws. [T]he central feature of minimum contacts is the requirement of purposeful availment." *Chavez*, 2023-NMCA-022, ¶ 7 (alteration, omission, internal quotation marks, and citation omitted). Thus, specific personal jurisdiction analysis is somewhat like a series of nesting dolls: To determine specific personal jurisdiction, we look to minimum contacts. To determine minimum contacts, we

look to purposeful availment. What we look to in determining purposeful availment is the precise question presented by this case.

{6}     The parties sharply disagree over the proper basis for purposeful availment, clashing over whether placing a product in the nationwide stream of commerce suffices. We observe, however, that the United States Supreme Court has not recently tussled over whether stream of commerce theory can be included in the purposeful availment analysis, let alone rejected stream of commerce theory outright, as Powermax implies. Rather, the United States Supreme Court has simply leaned into purposeful availment as a predicate to specific personal jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) ("The defendant . . . must take some act by which [they] purposefully avail[] [themselves] of the privilege of conducting activities within the forum [s]tate." (internal quotation marks and citation omitted)). As part of the purposeful availment analysis, this Court has implicitly adopted the United States Supreme Court's approach found in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) [1] and in doing so acknowledged the continued viability of stream of commerce theory found therein:

[1]We acknowledge the somewhat-splintered landscape regarding stream of commerce found in plurality United States Supreme Court opinions since *World-Wide Volkswagen—see Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1987); *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011)—and in New Mexico's plurality opinion in *Sproul*. *See* 2013-NMCA-072. In *Sproul*, both Judge Vanzi's opinion and then-Judge Vigil's special concurrence helpfully detailed the United States Supreme Court's "splintered view" regarding stream of commerce.

[I]f the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other [s]tates, it is not unreasonable to subject it to suit in one of those [s]tates if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum [s]tate does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate.

*World-Wide Volkswagen*, 444 U.S. at 297-98; *see also Chavez*, 2023-NMCA-022, ¶¶ 6, 9 (acknowledging that personal jurisdiction may exist under a stream of commerce theory). We therefore begin by explaining the United States Supreme Court's and New Mexico's approach to determining specific personal jurisdiction. We then mention the parties' opposing views and address their arguments. We

*See id.* ¶ 19. But Judge Vanzi ultimately relied on *World-Wide Volkswagen*, noting that "because the plurality opinions in [*Asahi* and *J. McIntyre Machinery*] are not the precedential holdings of the Court, a defendant's contacts with New Mexico continue to be evaluated by the stream of commerce standard as described in *World-Wide Volkswagen*." *Sproul*, 2013-NMCA-072, ¶ 19. Judge Vigil specially concurred, implicitly verifying *World-Wide Volkswagen* when he explained that the facts of *Sproul* did not require this Court to reject or adopt any view of the United States Supreme Court, but that the defendant's conduct and activities were sufficient to confer specific jurisdiction under either the majority opinion in *World-Wide Volkswagen* or the plurality opinions of *Asahi* and *J. McIntyre Machinery*. *Sproul*, 2013-NMCA-072, ¶ 48 (Vigil, J., specially concurring).

Because the most recent United States Supreme Court majority opinion on the subject, *World-Wide Volkswagen*, is still good law, however, and because this Court has issued binding precedent acknowledging stream of commerce since *Sproul*, *see Chavez*, 2023-NMCA-022, ¶¶ 6, 9, we simply rely on *World-Wide Volkswagen* and *Chavez* to guide our analysis here.

conclude by analyzing whether the district court has personal jurisdiction over Powermax.

**I.     The Legal Landscape of Specific Personal Jurisdiction**

{7}     New Mexico courts "may exercise specific personal jurisdiction over a nonresident defendant if that defendant purposefully availed itself of the privilege of conducting activities [in New Mexico], thus invoking the benefits and protections of its laws." *Chavez*, 2023-NMCA-022, ¶ 7 (alteration, internal quotation marks, and citation omitted). New Mexico's most recent precedent on the issue of what establishes purposeful availment follows:

> As explained recently by the United States Supreme Court, a defendant is considered to have purposefully availed itself of the privilege of conducting activities within the forum state—and, in turn, establishing the minimum contacts necessary to be subject to specific personal jurisdiction—where the defendant's contacts are "the defendant's own choice and not random, isolated, or fortuitous," and where the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum state or entering a contractual relationship centered there." Further, "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum state and is therefore subject to the state's regulation."

*Id.* ¶ 8 (alterations omitted) (quoting *Ford Motor Co.*, 592 U.S. at 359-60). In sum, New Mexico, like the United States Supreme Court, bestows specific personal jurisdiction on courts when (1) defendants purposefully avail themselves of the privilege of conducting activities within the forum state and (2) a plaintiff's claims are affiliated with or arise out of that purposeful availment. *See id.* Additionally, as

part of the first prong, "[o]ur courts may exercise specific personal jurisdiction over a defendant despite the absence of continuous and systematic contacts if the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice and the cause of action is related to those contacts." *Id.* ¶ 7 (internal quotation marks and citation omitted). The parties do not dispute the second prong, whether AVI's claims arise out of Powermax's contacts with New Mexico. We therefore focus our analysis on the first prong.

{8}    In determining purposeful availment, the first prong, this Court aligns with the United States Supreme Court in weighing whether a defendant "established numerous purposeful contacts in New Mexico to do business in the state." *Id.* ¶ 9; *see also Ford Motor Co.*, 592 U.S. at 359-60 (affirming that specific personal jurisdiction depends on a defendant's having sufficient contacts with the forum state). Courts analyze whether such contacts are "the defendant's own choice and not random, isolated, or fortuitous," and whether the defendant "deliberately reached out beyond its home—by, for example, exploiting a market in the forum state or entering a contractual relationship centered there." *Chavez*, 2023-NMCA-022, ¶ 8 (alteration, internal quotation marks, and citation omitted). Our state's jurisprudence also affirms the viability of stream of commerce considerations in its purposeful availment analysis, specifically that "personal jurisdiction may exist over a

nonresident defendant that 'delivers its products into the stream of commerce with the *expectation* that they will be purchased by consumers in the forum state.'" *Id.* ¶ 9 (quoting *Sproul*, 2013-NMCA-072, ¶ 20).

**A.      AVI and Powermax Harbor Conflicting Views on Stream of Commerce Theory**

{9}      AVI argues that Powermax purposefully availed itself of the New Mexico market by placing its products into the national stream of commerce, citing *Sproul* for legal support that stream of commerce theory is a viable way to establish purposeful availment. AVI encourages our continued adherence to *Sproul*, which, acknowledging the fractured nature of then-current United States Supreme Court opinions, noted the continued viability of stream of commerce theory found in *World-Wide Volkswagen*. *See Sproul*, 2013-NMCA-072, ¶¶ 17, 20-26. AVI goes on to argue that the district court erred when it relied on a case, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), that veers away from stream of commerce theory, since *J. McIntyre Machinery* is merely a plurality opinion.[2]

{10}      But Powermax points to recent state and federal case law that, Powermax argues, indicates a departure from stream of commerce theory. Powermax introduces two cases that, in its view, support the position that stream of commerce theory can no longer be a part of the purposeful availment analysis. *See Bristol-Myers Squibb*

---

[2]Powermax's and the district court's reliance on *J. McIntyre Machinery* is discussed in the next section.

*Co. v. Super. Ct. of Cal.*, 582 U.S. 255 (2017); *Ford Motor Co.*, 592 U.S. 351. Powermax asks this Court to "formally reject" *Sproul*, to "align New Mexico law with the U[nited] S[tates] Supreme Court's current . . . approach under *Bristol-Myers* and *Ford* [*Motor Co.*]," and to "ensure compliance with due process and harmonize New Mexico law with the evolution" of specific personal jurisdiction jurisprudence.

{11}    In sum, AVI urges us to reaffirm that stream of commerce theory can be part of the purposeful availment analysis; Powermax asks us to reject stream of commerce theory altogether, claiming it has been abandoned. Yet Powermax misrepresents specific personal jurisdiction jurisprudence, and neither party cites New Mexico's most recent, binding precedent on the matter, *see Chavez*, 2023-NMCA-022, ¶¶ 7, 10, which recognizes stream of commerce theory within specific personal jurisdiction analysis.

{12}    First, Powermax misrepresents specific personal jurisdiction jurisprudence by arguing that *Ford Motor Co.* and *Bristol-Myers* reject the idea that stream of commerce theory can be a part of the purposeful availment analysis. However, *Ford Motor Co.* and *Bristol-Myers* merely focus on the second prong of the specific personal jurisdiction analysis, which may explain the absence of discussion on the stream of commerce in both. In *Bristol-Myers*, the issue is whether there was "a connection between the forum and the specific claims at issue," 582 U.S. at 265, and

in *Ford Motor Co.*, the issue is whether the requirement that there be a connection included a causation element. 592 U.S. at 361-62. It is therefore inaccurate to imply that the holdings of *Ford Motor Co.* and *Bristol-Myers*—which, again, revolve around the second prong of the specific personal jurisdiction analysis—remove stream of commerce theory, a component of the first prong of the analysis, from our jurisprudence or support the district court's finding that it lacked personal jurisdiction over Powermax. As stated, it is the first prong that is at issue in our inquiry.

{13}     Second, this Court's jurisprudence post *Bristol-Myers* and *Ford Motor Co.*— which Powermax, AVI, and the district court all omitted from their arguments— further suggests that stream of commerce theory has yet to be extinguished. *See Chavez*, 2023-NMCA-022, ¶ 9 (implicitly affirming the viability of stream of commerce considerations in purposeful availment analysis). Accordingly, there is no need to resolve a debate the law has already settled; we simply apply existing precedent.

**B.     *J. McIntyre Machinery* Is a Nonprecedential Plurality Opinion That Predates Current Precedent**

{14}     In addition to mischaracterizing United States Supreme Court and New Mexico precedent on specific personal jurisdiction, Powermax insists that *J. McIntyre Machinery* "squarely rejected" the stream of commerce theory found in *Sproul* and *World-Wide Volkswagen*. Powermax argues that *J. McIntyre Machinery*

"reflects the current state of the law" in New Mexico. However, because both *Sproul* and *Chavez* postdate *J. McIntyre Machinery* and because *J. McIntyre Machinery* is a nonprecedential plurality opinion of the United States Supreme Court, we agree with AVI that the district court's and Powermax's reliance on *J. McIntyre Machinery* was misplaced.

**C.    Additional Case Law Integrates Rather Than Rejects Stream of Commerce Theory**

{15}    Beyond *Bristol-Myers* and *Ford Motor Co.*, the New Mexico state and federal cases Powermax cites to support its assertion that *Sproul* and stream of commerce theory are no longer good law are likewise inapposite. Specifically, *Grano v. HCA Healthcare, Inc.*, A-1-CA-39669, mem. op. (N.M. Ct. App. Apr. 12, 2023) (nonprecedential) and *Trei v. AMTX Hotel Corp.*, 2014-NMCA-104, 336 P.3d 393, simply reiterate well-established standards of specific personal jurisdiction analysis rather than abandon *Sproul*'s stream of commerce reasoning as Powermax avers. *Grano* and *Trei* affirm that courts examine fact-bound issues on a case-by-case basis to determine whether a defendant "purposefully directed its activities at New Mexico," *Grano*, A-1-CA-39669, mem. op. ¶ 8, or "purposely established contact with New Mexico." *Trei*, 2014-NMCA-104, ¶ 6. We disagree with Powermax that *Grano* and *Trei* repudiate either stream of commerce theory or *Sproul*. Rather, both cases cite *Sproul* and implement its guidance, as do we. *See Grano*, A-1-CA-39669,

mem. op. ¶ 8; *Trei*, 2014-NMCA-104, ¶¶ 5-6. Furthermore, *Grano* is not binding on this Court.

**II.      Powermax Purposefully Availed Itself of the New Mexico Market**

{16}      We next analyze whether Powermax purposefully availed itself of the New Mexico market. In response to Powermax's request that we "ensure compliance with due process and harmonize New Mexico law with the evolution" of specific personal jurisdiction jurisprudence, we answer that to do so we must uphold current jurisprudence, not abandon it.[3] Therefore, we structure our analysis as we must— within the confines of existing New Mexico and United States Supreme Court precedent.

{17}      As mentioned, to be subject to specific personal jurisdiction, a defendant must have "purposefully availed itself of the privilege of conducting activities" within New Mexico and the claims in the litigation must arise out of or relate to the defendant's conduct directed at that state.[4] *Chavez*, 2023-NMCA-022, ¶ 8. Again focusing on the first prong, "we look at what activities the defendant directed toward New Mexico" to determine purposeful availment. *Id.* ¶ 7 (internal quotation marks

---

[3]We also note that to do as Powermax asks would impinge upon the most recent specific personal jurisdiction jurisprudence, *see Chavez*, 2023-NMCA-022, and exceed this Court's purview.

[4]The due process consideration that extends out of the first prong, whether exercising specific personal jurisdiction would offend traditional notions of fair play and substantial justice, is addressed in the final section of this opinion.

and citation omitted). Applying this specific personal jurisdiction framework, we compare this case with others to determine whether personal jurisdiction over Powermax existed. *See Sproul*, 2013-NMCA-072, ¶ 17 ("Whether or not personal jurisdiction exists over a particular defendant is decided on a case-by-case basis."). Finally, "[w]e construe the pleadings and affidavits in the light most favorable to the complainant [AVI], and [AVI] need only make a prima facie showing that personal jurisdiction exists." *Id.* ¶ 6 (internal quotation marks and citation omitted). Dismissal is proper only if all the specific facts that AVI alleges "collectively fail to state a prima facie case for jurisdiction" over Powermax. *See id.*

{18} In *Sproul*, the defendant was subject to personal jurisdiction primarily because it was found to have sufficient minimum contacts with New Mexico under stream of commerce theory.[5] *See id.* ¶ 7. There, the defendant, a bicycle parts manufacturer known as Joy Co., was—like Powermax—a foreign corporation with its principal place of business in China and operating under the laws of the Republic of China. *Id.* ¶ 28. Joy Co. had agents and suppliers in the United States that distributed parts that Joy Co. manufactured, and Joy Co. knew that products bearing their

---

[5]Although some of their reasoning differed, Judge Vanzi and Judge Vigil (in his special concurrence) agreed that there was enough conduct and activity by the defendant to confer specific jurisdiction on the New Mexico district court under a theory of stream of commerce. *See* 2013-NMCA-072, ¶ 7; *see also id.* ¶¶ 47-53 (Vigil, J., specially concurring) (explaining that conduct was also sufficient under a "purposefully directed" test (internal quotation marks and citation omitted)).

manufactured bicycle parts were sold worldwide. *Id.* ¶ 29. Joy Co. complied with United States safety standards. *Id.* ¶ 30. Joy Co. had a "full-time marketing and sales employee" who, though located in California, sold Joy Co. products and provided customer service and support to Joy Co.'s clients in New Mexico. *Id.* ¶ 28. This Court held that the plaintiff had made a prima facie showing that personal jurisdiction was proper in New Mexico. *Id.* ¶ 45. Importantly, like the case here, there was no dispute in *Sproul* about the litigation arising out of or relating to *Sproul*'s activities in New Mexico. The plaintiff was injured in New Mexico by a *Sproul* product. The sole controversy was whether Sproul had established minimum contacts with New Mexico by availing itself of the New Mexico market.

{19} In *Chavez*, Bridgestone, a tire manufacturer and the defendant, operated a "copyrighted, interactive website in New Mexico to solicit business and establish channels of communication with New Mexico residents." 2023-NMCA-022, ¶ 9. The record showed that Bridgestone was also a "frequent litigant in New Mexico courts." *Id.* This Court held that Bridgestone had established "numerous purposeful contacts" sufficient to establish minimum contacts with New Mexico and that those contacts were sufficiently related to the litigation because the plaintiff was injured by a Bridgestone product in New Mexico—even though the plaintiff resided in another state and had not purchased or serviced the defective Bridgestone product in New Mexico.

**{20}** The similarities between the facts of the present appeal and the facts of *Sproul* and *Chavez* support the conclusion that AVI has made a prima facie case with respect to purposeful availment and therefore minimum contacts. Powermax is alleged to have sold fan motors to intermediaries in the United States, including 2.8 million fans to AVI during the at-issue time period; is alleged to have suppliers and joint venture relationships in the United States that distribute its products nationally; is not only aware of its presence throughout many states in America but claims an "important status" in American markets; has a website that touts this status and lists a U.S. phone number, offering nationwide customer service availability; maintains worldwide insurance coverage, that, while not specific to New Mexico, presumably protects New Mexicans and Powermax from insurance claims by New Mexicans; complies with U.S. safety standards; and sells its products through stores like Home Depot, Lowe's, Grainger, Harbor Freight, and Wal-Mart.

**{21}** In our view, these actions are precisely the "efforts of the manufacturer or distributor to serve directly or indirectly[] the market for its product in other [s]tates" that the United States Supreme Court held warrants the exercise of personal jurisdiction in *World-Wide Volkswagen*. 444 U.S. at 296-97. Additionally, Powermax's contacts with New Mexico seem to be of its "own choice and not random, isolated, or fortuitous." *Chavez*, 2023-NMCA-022, ¶ 8. They are evidence of Powermax "deliberately reach[ing] out beyond its home" and "exploiting [the

New Mexico] market." *Id.* Viewing the allegations and evidence in favor of AVI as the complainant, we hold that AVI has met its burden of showing that personal jurisdiction exists. *See Sproul*, 2013-NMCA-072, ¶ 6 ("[T]he complainant need only make a prima facie showing that personal jurisdiction exists." (internal quotation marks and citation omitted)).

**III.    Exercising Personal Jurisdiction Over Powermax Would Not Offend Traditional Notions of Fair Play and Substantial Justice**

{22}    "The United States Supreme Court has held that even if a defendant has established sufficient minimum contacts with the forum state, the Due Process Clause forbids the assertion of personal jurisdiction over that defendant under circumstances that would offend traditional notions of fair play and substantial justice." *Id.* ¶ 35 (internal quotation marks and citation omitted); *accord World-Wide Volkswagen Corp.*, 444 U.S. at 292. The question is whether the relationship between the defendant and the forum state is such that it is "reasonable to require the corporation to defend the particular suit which is brought there." *World-Wide Volkswagen Corp.*, 444 U.S. at 292 (text only) (citation omitted). To answer, we balance five factors: "the burden on the defendant, New Mexico's interest, the plaintiff's interest, the interest in an efficient judicial system, and the interest in promoting public policy." *Zavala v. El Paso Cnty. Hosp. Dist.*, 2007-NMCA-149, ¶ 12, 143 N.M. 36, 172 P.3d 173.

{23}    We conclude that asserting jurisdiction over Powermax is fair and reasonable. As stated, AVI has made a prima facie case of purposeful availment. AVI has an interest in adjudicating a controversy that involves the sale of a product and an ensuing injury for which Powermax claims indemnity. The State of New Mexico likewise has a substantial interest in protecting its residents from property damage allegedly caused by defective products. Finally, because the property damage caused by the allegedly defective Powermax product occurred in New Mexico, litigating the controversy in New Mexico promotes efficient resolution of controversies as well as public policy. For these reasons, requiring Powermax to litigate in New Mexico does not offend traditional notions of fair play and substantial justice and is not unreasonable.

**CONCLUSION**

{24}    We reverse and remand.

{25}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**ZACHARY A. IVES, Judge**


_____
**JANE B. YOHALEM, Judge**