# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CANDACE NOLL, Individually and as Personal Representative of the Estate of Donald Noll, Deceased,<br><br>    Appellant,<br><br>    v.<br><br>SPECIAL ELECTRIC COMPANY, INC.,<br><br>    Respondent,<br><br>    and<br><br>AMERICAN BILTRITE, INC.;<br>AMETEK INC.;<br>BIRD INCORPORATED;<br>BORGWARNER MORSE TEC INC. as successor-by-merger to BORG-WARNER CORPORATION;<br>CBS CORPORATION, a Delaware Corporation, f/k/a VIACOM INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, f/k/a WESTINGHOUSE ELECTRIC CORPORATION;<br>CERTAIN TEED CORPORATION;<br>CONWED CORPORATION;<br>DOMCO PRODUCTS TEXAS INC;<br>FORD MOTOR COMPANY;<br>GENERAL ELECTRIC COMPANY;<br>GEORGIA-PACIFIC LLC;<br>HERCULES INCORPORATED;<br>HONEWELL INTERNATIONAL INC.;<br>INDUSTRIAL HOLDINGS CORPORATION f/k/a THE CARBORUNDUM COMPANY;<br>INGERSOLL-RAND COMPANY; | No. 77888-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

| J-M MANUFACTURING COMPANY INC.; KAISER GYPSUM COMPANY INC.; KELLY MOORE PAINT COMPANY INC., |
| --- |
| Defendants. |

HAZELRIGG, J. — This case returns following entry of findings of fact on remand as directed by our opinion in Noll v. Special Electric Company, Inc., 9 Wn. App. 2d 317, 444 P.3d 33 (2019). We ordered this remand because neither the trial court's reasoning nor the underlying facts supporting its decision that it lacked personal jurisdiction over Special Electric Company could be discerned from the original record on appeal. We remanded for the trial court to return to the documentary evidence previously submitted by the parties, determine whether Special Electric purposefully availed itself of the privilege of doing business in Washington, and provide us with the record necessary to engage in our analysis of the issues raised by appellant Noll. We retained jurisdiction for subsequent review. On remand, a different judge reviewed the record and issued findings of fact. This trial court's findings support the conclusion that personal jurisdiction exists over Special Electric. Accordingly, we reverse the dismissal of Noll's lawsuit against Special Electric.

## FACTS

The trial court dismissed Donald Noll's asbestos claims against Special Electric Company (Special Electric) for lack of personal jurisdiction.[1] Noll appealed and the Washington Supreme Court remanded to the trial court to reconsider its

---

[1] The facts are set forth in detail in this court's opinion in Noll v. Special Electric Company, Inc., 9 Wn. App. 2d 317, 444 P.3d 33 (2019). We repeat only those facts necessary to resolve the issues before us now.

ruling in light of State v. LG Electronics, Inc., 186 Wn.2d 169, 375 P.3d 1035 (2016). Noll v. Am. Biltrite Inc., 188 Wn.2d 402, 416, 395 P.3d 1021 (2017) (Noll I). The court concluded that Noll did not allege sufficient facts for Washington to exercise specific personal jurisdiction over Special Electric. But the court also indicated that it did not intend to preclude the trial court from making its own finding of jurisdiction on remand "depending on the allegations that the plaintiff then raises." Noll I, 188 Wn.2d at 406. Because "Noll failed to allege *any* action taken by Special to purposefully avail itself of the benefits and protections of the Washington market," the court declined to decide "if showing actual knowledge or awareness is necessary, or sufficient, to finding specific personal jurisdiction in stream of commerce cases." Noll I, 188 Wn.2d at 416.

On remand, Noll presented a new motion to establish specific jurisdiction with additional evidence. After conducting a preliminary hearing based solely on documentary evidence, the trial court denied Noll's motion to establish personal jurisdiction over Special Electric. The trial court did not enter findings of fact or conclusions of law, entering only the following order denying the motion:

> The evidence presented by Plaintiff is insufficient to establish that Special [Electric] to [sic] purposely avail[ed] itself of the benefits and protections of the Washington market, thus conferring specific jurisdiction in this matter. Special [Electric]'s other unrelated contacts with two Washington State companies are not relevant to [the] issue of specific jurisdiction which is the only basis that is asserted.

Noll appealed. Noll v. Special Elec. Co., 9 Wn. App. 2d 317, 444 P.3d 33 (2019) (Noll II). We held that it was appropriate to apply the "usual standards of review in Washington," i.e., de novo for conclusions of law and substantial

evidence review for findings of fact. Noll II, 9 Wn. App. 2d at 321. While acknowledging that case law permits Washington courts to review documentary evidence de novo, we also recognized our authority to defer to the trial court's findings in cases where the evidence was voluminous and complex. Noll II, 9 Wn. App. 2d at 321 (citing Dolan v. King County, 172 Wn.2d 299, 310-11, 258 P.3d 20 (2011)). Because the evidence here "involves a number of complex questions, including the meanings of corporate documents, abbreviations, figures, and percentages," we held "it appropriate to defer to the trial court as to the facts in these circumstances." Noll II, 9 Wn. App. 2d at 321.

We rejected Special Electric's invitation to rely on implied findings of fact based on the trial court's decision, noting that Special Electric failed to prepare a formal order or request findings of fact and this court was "not inclined to speculate on findings beneficial to the party that failed to procure them." Noll II, 9 Wn. App. 2d at 323. We further acknowledged that "the subject of specific jurisdiction is not well-settled law," noting a "significant disagreement" among courts about how to test evidence of personal jurisdiction. Id.

We then remanded for the trial court to make specific factual findings in support of its ruling "[b]ecause we cannot discern the reasoning or underlying facts supporting the decision to deny personal jurisdiction against Special Electric," and "[b]ecause we have no reliable indication of the facts as the trial court understood them." Noll II, 9 Wn. App. 2d at 319, 323. Specifically, we asked the trial court to answer the following questions "as well as any other findings of fact that support its decision":

4

> 1. Did Special Electric control a significant share of the United States market for asbestos?
> 2. Did Special Electric intend for its asbestos to be incorporated into products sold across the United States and in Washington?
> 3. Was a substantial volume of CertainTeed asbestos-cement pipe containing Special Electric's asbestos sold in Washington as part of the regular flow of commerce?
> 4. Did Special Electric know that CertainTeed sold asbestos-cement pipe in Washington?
> 5. Should Special Electric have known that CertainTeed sold asbestos-cement pipe in Washington?

Noll II, 9 Wn. App. 2d at 323-24.

The trial judge who made the ruling underlying this appeal retired prior to our remand and the case was ultimately reassigned to another.[6] As we instructed, the trial court reviewed the evidence, clarifying that "[t]his court's role is *not* limited to finding only facts that support the trial court's prior decision to dismiss for lack of jurisdiction," and "acts as a neutral fact finder – it does not view the facts in a light favorable to one side or the other, and will only make reasonable inferences based on the evidence in the record." The court made extensive findings of fact and the following findings in answer to our questions on remand:

> There is insufficient evidence in the record to determine Special Electric's volume share of the total United States market for all types of asbestos during the relevant time period. However, based on the findings set forth above, the court finds that, by 1977-79, when Mr. Noll worked on construction in Washington cutting asbestos-cement pipe manufactured by CertainTeed, Special Electric controlled a very substantial share of the United States market for crocidolite (blue) asbestos, and Special Electric's volume share of the overall United States market for asbestos of all types was not insignificant.

---

[6] The superior court denied Special Electric's request to assign the case to Judge Ramsdell as a Judge Pro Tempore. This court denied Special Electric's request to "direct that the assignment of the remand matter to Judge Scott be withdrawn" and "request Hon. Judge Jeffrey M. Ramsdell (Ret.) to accept a *pro tem* assignment in order to complete the remand process." Respondent's Motion For Clarification of Remand Directive, filed September 12, 2019; Order Denying Motion for Clarification of Remand Directive, filed October 11, 2019.

5

Furthermore, considering facts other than just volume market share, Special Electric was an active and significant participant in the overall United States markets for asbestos, and sought to stay well-informed of and involved in the markets for asbestos.

Based on the findings set forth above, as well as on additional facts set forth below, the court finds that Special Electric intended for its asbestos to be incorporated into products sold across the United States, including in Washington.

Based on the forgoing facts, a substantial volume of CertainTeed asbestos-cement pipe containing Special Electric's asbestos was sold in Washington as part of the regular flow of commerce.

Based on the substantial circumstantial evidence described above, the court finds that Special Electric knew CertainTeed sold asbestos-cement pipe in Washington.

Based on the findings set forth above, and *a fortiori*, Special Electric should have known that CertainTeed sold asbestos-cement pipe in Washington.

DISCUSSION

We review factual findings following a preliminary hearing for substantial evidence and questions of law de novo. Noll II, 9 Wn. App. 2d at 320-21. We defer to the trial court as the fact finder to weigh the evidence and draw reasonable inferences therefrom. State v. Perebeynos, 121 Wn. App. 189, 196, 87 P.3d 1216 (2004). As noted above, we held it appropriate to defer to the trial court to make factual findings rather than act as initial fact finders, due to the complexity of the factual issues raised in this case. Noll II, 9 Wn. App. 2d at 321.

We remanded for the trial court to enter findings because we did not have sufficient information to review the court's ruling on personal jurisdiction. As the trial court indicated on remand, the task before it was to review the record, find the facts, and answer the questions set out in our first opinion. The parties agreed

6

that all the evidence to be considered on remand was properly before the court. Now having before us the relevant findings, our task is to determine whether those findings support the exercise of personal jurisdiction over Special Electric.

Special Electric contends that the trial court exceeded the scope of remand. Because the first judge concluded there was no personal jurisdiction over Special Electric and the second judge concluded the very opposite, Special Electric asks this court to ignore the court's findings and affirm the first judge's order of dismissal. We decline to do so. Because we had an insufficient factual record to affirm the court's order of dismissal, our only alternative would have been to reverse the order of dismissal in its entirety and allow Special Electric to refile the jurisdictional motion to dismiss on remand. Had we done so, Special Electric would have been reassigned to a new judge and would be in the exact same position it finds itself in now. And we would be reviewing the same trial court's findings of fact and conclusions of law as we now undertake in this opinion.

These findings support a conclusion that haling Special Electric into a Washington court does not violate its due process rights. The due process clause requires "that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.'" LG Elecs., 186 Wn.2d at 176 (alteration in original) (internal quotation marks omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Washington's long arm statute, RCW 4.28.185, confers specific personal jurisdiction over nonresident defendants so long as the exercise of jurisdiction complies with federal due process. Noll I, 188 Wn.2d at 411 (citing Shute v.

Carnival Cruise Lines, 113 Wn.2d 763, 766-67, 783 P.2d 78 (1989)). Due process requires that: (1) purposeful minimum contacts exist between the defendant and the forum state, (2) the plaintiff's injuries arise out of or relate to those minimum contacts, and (3) the exercise of jurisdiction is reasonable, consistent with notions of fair play and substantial justice. Grange Ins. Ass'n v. State, 110 Wn.2d 752, 758, 757 P.2d 933 (1988). Here, the focus of the parties' dispute is whether Noll established that Special Electric had purposeful minimum contacts with Washington.

"To establish purposeful minimum contacts, there must be some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" LG Elecs., 186 Wn.2d at 177 (quoting Burger King, 471 U.S. at 475). "A foreign manufacturer or distributor does not purposefully avail itself of a forum when the sale of its products there is an 'isolated occurrence' or when the unilateral act of a consumer or other third party brings the product into the forum state." LG Elecs., 186 Wn.2d at 177 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). But purposeful availment may be established when a foreign manufacturer seeks to serve the forum state's market and places goods into the stream of commerce with intent that they will be purchased by that state's consumers. LG Elecs., 186 Wn.2d at 177-78 (citing J. McIntyre Mach., Ltd., v. Nicastro, 564 U.S. 873, 881-82, 888-89, 131 S. Ct. 2780, 180 L.Ed.2d 765 (2011); Asahi Metal Indus. Co v. Superior Court, 480 U.S. 102, 109-13, 117-21, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987); World-

Wide Volkswagen, 444 U.S. at 295-97; Grange Ins. Ass'n, 110 Wn.2d at 761-62). Jurisdiction cannot be based on mere foreseeability that a product may end up in the forum state. Rather, "the defendant's conduct and connection with the state must be such that it should reasonably anticipate being haled into court there." LG Elecs., 186 Wn.2d at 178.

In LG Electronics, the court held that the State's complaint against companies who manufactured cathode ray tubes (CRTs) was sufficient to establish a prima facie case of purposeful minimum contacts where the State alleged that the defendant companies: (1) dominated the global market, (2) sold CRTs into international streams of commerce with the intent that the CRTs would be incorporated into millions of CRT products sold across the United States and in large quantities in Washington, and (3) intended for their price-fixing activities to elevate the price of CRT products purchased by Washington consumers. 186 Wn.2d at 182. The court agreed with the State that the "presence of millions of CRTs in Washington was not the result of chance or the random acts of third parties, but a fundamental attribute of [the Companies'] businesses." Id.

In so holding, the court cited Justice Breyer's concurring opinion in J. McIntyre, as representing the holding of the Court:

> Under J. McIntyre, a foreign manufacturer's sale of products through an independent nationwide distribution system is not sufficient, absent something more, for a State to assert personal jurisdiction over a manufacturer when only one product enters a state and causes injury. Id. at 888-89, 131 S. Ct. 2780 (Breyer, J., concurring). J. McIntyre did not foreclose an exercise of personal jurisdiction over a foreign defendant where a substantial volume of sales took place in a state as part of the regular flow of commerce.

LG Elecs., 186 Wn.2d at 181. The court concluded that "[a]n exercise of jurisdiction based on the allegations in the State's complaint is not foreclosed by J. McIntyre" and the State made a prima facie showing of purposeful minimum contacts. LG Elecs., 186 Wn.2d at 183, 185.

Justice Breyer's concurrence in J. McIntyre stated that New Jersey courts could not establish specific jurisdiction based on a "single isolated sale" even if accompanied by a national sales effort. 564 U.S. at 888. The concurrence noted the facts showed no regular flow or regular course of sales in the state, "there is no 'something more,' such as special state-related design, advertising, advice, marketing, or anything else," and the plaintiff did not introduce a list of potential New Jersey customers who might have regularly attended trade shows or otherwise show that the defendant manufacturer delivered its goods in the stream of commerce with the expectation that they would be purchased by New Jersey consumers. J. McIntyre, 564 U.S. at 889.

As noted above, in Noll I, the court declined to decide "if showing actual knowledge or awareness is necessary, or sufficient, to finding specific personal jurisdiction in stream of commerce cases" because "Noll failed to allege *any* action taken by Special to purposefully avail itself of the benefits and protections of the Washington market." 188 Wn.2d at 416. The court noted that "[t]he only connection to Washington that Noll alleged was the unilateral act of an out-of-state third party, Certain-Teed," and Noll did not allege that Special was aware of CertainTeed's connection to Washington or that Special was aware that CertainTeed delivered any of its pipes outside of California. Id.

10

We hold that establishing purposeful availment for the exercise of personal jurisdiction in stream of commerce cases in Washington State requires a showing of actual awareness. See LG Elecs., 186 Wn.2d at 182 (finding purposeful availment where defendants sold product "with intent" it would be incorporated in products "sold across the United States and in large quantities in Washington"). Special Electric contends that Noll failed to establish purposeful availment under this test. We disagree.

The trial court engaged in an analysis of the evidence on remand and found that it demonstrated actual awareness. Specifically the court found:

37. There is no direct evidence that Special Electric knew of specific sales by Certain-Teed in Washington. However, substantial circumstantial evidence supports that Special Electric knew CertainTeed sold asbestos-cement pipe nationwide, including in Washington.

38. CertainTeed's 1971 Annual Report stated that it acquired its asbestos-cement pipe business from Keasby & Mattison as part of its expansion program, and it "operated five asbestos cement pipe plants coast to coast." CP 683-84, 688. Special Electric has admitted that CertainTeed's annual reports were materials that it would have reviewed to determine "who are we dealing with and what are their markets and what [was] the scope of their sales." TR 36. Special Electric also acknowledged that [it] would be reasonable to presume that Special Electric did its due diligence on CertainTeed and CertainTeed's markets. TR 32. A reasonable commercial actor such as Special Electric would have understood "coast to coast" to mean "throughout the United States," including Washington. The 1971 annual report also conveyed that CertainTeed was a large industrial manufacturer, with a "nationwide network of research, production, sales and distribution facilities," and over a hundred facilities throughout the country.

39. CertainTeed's 1977 Annual Report stated that it "ranks among the nation's top 300 industrial companies," and that it "distributes piping system components nationwide." CP 732-

34. The 1977 Annual Report reports a 20% increase in asbestos-cement pipe sales, attributable primarily to sales in the Southwest and West. CP 735. The 1977 report stated that demand for pipe system components, including asbestos-cement pipe, "was strong on the West Coast."

40. The court takes judicial notice that "the West Coast" is commonly understood to include Washington. No evidence in the record before this court suggests that the term "the West Coast" as used by Special Electric or CertainTeed has any other meaning. Special Electric's contention that CertainTeed's "West Coast" market was limited to California and Arizona (Dkt. Sub 388, Defendant's Proposed Findings at ¶¶ 12, 14, 20), is strained, not supported by any evidence, and unreasonable. A reasonable commercial actor in Special Electric's position would have reasonably known that CertainTeed's strong West Coast sales included sales in Washington.

41. Referring specifically to asbestos-cement pipe, CertainTeed's 1977 annual report further stated that increased construction activity "contributed to the recovery of the asbestos - cement pipe market with particular momentum gained in the West and Southwest." CP 735. The "West" is commonly understood to include Washington, and the Court finds that a reasonable commercial actor such as Special Electric would have reasonably understood that CertainTeed's market for asbestos-cement pipe in the West included Washington.

42. CertainTeed's 1978 Annual Report stated that "A/C pipe" was "used in one out of three municipalities in the United States." CP 722-23, 727. Although this reference did not specify which municipalities were using asbestos-cement pipe made by CertainTeed (as opposed to other manufacturers), the report would have further informed Special Electric as to the extent of the United States market for asbestos-cement pipe, and it knew that CertainTeed was serving the entire market. Other information available to Special Electric indicated that as much as 79% of the communities in Pacific states, specifically including Washington, used asbestos-cement pipe.

43. Special Electric kept informed as to CertainTeed's needs and product specifications. CP 890-95. Mr. Wareham visited CertainTeed on several occasions. CP 885-89. Mr. Wareham took executives from CertainTeed on trips to South Africa to visit the Gefco mine as a means, among other reasons, of

learning more about CertainTeed's needs and business. CP 896-910. This evidence shows a close working relationship between Special Electric and CertainTeed and supports a reasonable inference that Special Electric understood the scope of CertainTeed's market for asbestos-cement pipe, which included substantial sales into Washington.

44. CertainTeed's sales of asbestos-cement pipe into Washington were regular and substantial during the time period in question. CP 1428-64, 174-204. See Paragraphs 35 and 36 above. Although there is no evidence that Special Electric ever reviewed CertainTeed's actual invoices, the fact that such sales occurred, and that there were regular and substantial increases in sales, supports the likelihood that Special Electric, as an active and informed participant in the asbestos-cement pipe market, would have been aware that CertainTeed was selling asbestos-cement pipe in Washington.

45. Special Electric's major asbestos-cement pipe industry customers, including CertainTeed, were – like Special Electric – members of the AIA. CP 943-78, 981-90. Between 1975 and 1980, Mr. Wareham attended AIA conferences and meetings a couple times per year.

46. Special Electric was also very involved with the Asbestos-Cement Pipe Producers Association ("ACPPA") of which its major crocidolite customers, including CertainTeed, were members.

47. One purpose for Special Electric's involvement in these organizations and its attending conferences and meetings was to acquire information to further its business as a supplier of asbestos.

48. Special Electric's involvement in these organizations for the purpose of acquiring information further supports the reasonable inference that it would have known that CertainTeed's market for asbestos-cement pipe was nationwide, and that its nationwide market included Washington.

The court further found that Special Electric understood that the asbestos-cement pipe industry sold products containing its asbestos nationwide and that

13

"Washington was a target market for the industry."

The trial court's findings are reasonable inferences from the evidence and support the conclusion that Special Electric purposefully availed itself of the benefits and protections of Washington law. Noll showed that Special Electric was aware of CertainTeed's connection to Washington and that Special Electric was aware that CertainTeed delivered many of its pipes outside of California, allegations the court noted were lacking in Noll I, 188 Wn.2d at 416. As in LG Electronics, Noll demonstrated a regular flow of Special Electric's asbestos into Washington State and that the presence of its product in Washington "was not the result of chance or the random acts of third parties, but a fundamental attribute of [its] businesses." 186 Wn.2d at 182. Accordingly, personal jurisdiction exists over Special Electric.

We reverse.

_____

WE CONCUR:

_Andrus, A.C.J._

14

Candance Noll v. Special Electric Co., Inc., No. 77888-9-I

VERELLEN, J. (dissenting) — I respectfully dissent.  One of the fundamental differences between trial courts and appellate courts is the role of the trial court judge or jury as fact finder.  And yet, there are limited circumstances when the role of the appellate court extends to factual determinations.  A long line of cases permit de novo review of documentary evidence by an appellate court even where a trial court has made findings of fact.[23]  Where a case is decided on documentary evidence and credibility is not an issue, the appellate court may independently review evidence and make required findings.[24]  Notably, Noll acknowledges that this court retains the authority to undertake the resolution of the factual questions

---

[23] Noll v. Special Elec. Co., Inc., 9 Wn. App. 2d at 317, 444 P.3d 33 (2019); see, e.g., Serv. Emp. Int'l Union Local 925 v. Univ. of Wash., 193 Wn.2d 860, 866, 447 P.3d 534 (2019) (conducting de novo review of factual questions where a trial court made no credibility determinations and made findings of fact only on documentary evidence) (citing Spokane Police Guild v. Liquor Control Bd., 112 Wn.2d 30, 35-36, 769 P.2d 283 (1989)); State v. Thetford, 109 Wn.2d 392, 396, 745 P.2d 496 (1987) ("This court is freer to review factual findings based solely on documentary evidence, as the trial court was in no better position than the appellate court to make observations of demeanor."); State ex rel. Pac. Fruit & Produce Co., Inc. v. Superior Court for King County, 22 Wn.2d 327, 331-32, 155 P.2d 1005 (1945) (explaining a trial court's findings of fact from a special proceeding were "not in any way binding" because the proceeding was decided solely on documentary evidence without evaluating witness credibility).

[24] 14A WASHINGTON PRACTICE, CIVIL PROCEDURE § 33.22, at 458-59 (3d ed. 2018) (citing Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 829 P.2d 1099 (1992)).

governing the application of specific jurisdiction to Special Electric and "may do so now."[25]

The majority relies on the replacement judge's findings of fact and applies the traditional substantial evidence standard of review. But, in my view, the primary purpose of remanding for the entry of findings of fact was to seek the factual context relied upon by the now-retired trial judge for his conclusion Washington state lacked specific jurisdiction over Special Electric. When the retired judge was unavailable, the replacement judge worked diligently to review the record and make his own findings of fact. Those findings do not align with the original trial judge's conclusions. Our prior ruling did not preclude the use of a replacement judge, but, under these circumstances, we are not bound by the replacement judge's findings.[26] I respectfully conclude that this court rather than a replacement judge should make the factual decisions necessary to resolve the question of specific jurisdiction.

Although voluminous details are presented, all the key facts are grounded in undisputed declarations and documents. There are no questions of credibility nor particular topical concerns.[27] The complexity of specific jurisdiction

---

[25] Appellant's Supp. Br. Opp. Resp't's Mot. That Trial Court Exceeded Its Authority on Remand at 12 (citing W.R.P. Lake Union Ltd. P'ship v. Exterior Servs. Inc., 85 Wn. App. 744, 750, 934 P.2d 722 (1977)).

[26] Serv. Emps. Int'l Union Local 925, 193 Wn.2d at 866.

[27] For example, some domestic relations cases are not suited to de novo review of undisputed documents. See In re Marriage of Rideout, 150 Wn.2d 337, 351, 77 P.3d 1174 (2003) (reviewing a trial court's domestic relations decision for abuse of discretion despite all evidence being documentary because "'local trial judges decide factual domestic relations questions on a regular basis' and consequently stand in a better position than an appellate judge to decide" fact-

jurisprudence does not compel deference to factual findings by a judicial officer with no greater insight into the undisputed evidence than we have.

I agree with the majority that "establishing purposeful availment for the exercise of personal jurisdiction in stream of commerce cases in Washington state requires a showing of actual awareness."[28] We must decide whether Special Electric was actually aware that CertainTeed was distributing concrete pipe containing Special Electric's asbestos to Washington state. And this narrow question is readily resolved by this court reviewing the undisputed declarations and documents.

As acknowledged by the replacement judge, there is no direct evidence that Special Electric was aware CertainTeed's asbestos concrete pipe products were flowing to Washington state.[29] And the documents reviewed by Special Electric did not indirectly reveal that information. The references in CertainTeed's 1971 annual report showed it operated five asbestos cement pipe plants "coast to coast,"[30] but this merely reflects the location of some of its asbestos cement pipe plants on the coasts in California and Georgia. The 1977 annual report refers to distributing pipe "nationwide" with sales in the Southwest and West and strong demand on the "west coast," but these are merely general geographic references

intensive domestic relations issues) (quoting In re Parentage of Jannot, 149 Wn.2d 123, 126-28, 65 P.3d 664 (2003) (distinguishing domestic relations cases from other civil cases and declining to apply de novo review where the trial court's decision was based solely on documentary evidence)).

[28] Majority at 11.

[29] Clerk's Papers (CP) at 687 (finding of fact (FF) 37).

[30] CP at 683-84, 688 (FF 38).

with no specific reference to Washington state. And mere aspirations for nationwide distribution are not adequate for specific jurisdiction based upon the stream of commerce theory.[31] The 1978 CertainTeed annual report refers to use of asbestos concrete pipe by municipalities in "Pacific states" without indicating CertainTeed's share of that market or if municipalities in Washington state were buying pipe from CertainTeed.[32] Nor are other documents compelling. Documents revealing a close working relationship with Mr. Wareham by virtue of his trips to South Africa do not show Special Electric's actual knowledge of CertainTeed's sales of asbestos concrete pipe in Washington state. Sales of other CertainTeed products in Washington state also do not establish awareness of CertainTeed asbestos concrete pipe sales in Washington state. And there is no evidence that Special Electric ever saw a 1965 CertainTeed bulletin regarding its sales of pipe in Washington. Arguably, this evidence could show a supplier should have known CertainTeed used its asbestos to serve consumers in Washington state, but actual awareness is required for a court to possess specific jurisdiction over Special Electric.

Under these unusual circumstances, this court should independently review the undisputed declarations and documents and not defer to the replacement judge. To establish specific jurisdiction, Noll had to establish Special Electric was

---

[31] Noll v. American Biltrite Inc., 188 Wn.2d 402, 414, 395 P.3d 402 (2017) (citing J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 888-89, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (Breyer, J., concurring)); State v. L.G. Electronics, Inc., 186 Wn.2d 169, 181, 375 P.3d 1035 (2016) (citing J. McIntyre, 564 U.S. at 888-89 (Breyer, J., concurring)).

[32] CP at 991-92, 998 (FF 42).

actually aware that CertainTeed was distributing asbestos concrete pipe in Washington state. After reviewing the record, the evidence does not show Special Electric was actually aware its asbestos was being used by CertainTeed to construct pipe for distribution in Washington state. Because Noll did not meet her burden, I would affirm the original trial judge's decision that there is no basis for specific jurisdiction.