# Supreme Court of Texas

---

No. 24-0207

---

Hyundam Industrial Company, Ltd.,

*Petitioner*,

v.

Paul Swacina, as Successor Guardian of the Person and Estate of
Johari Kibibi Powell, an Incapacitated Person, and Paul Swacina
as Next Friend of D.A.P., D.A.C., and D.A.C., Minor Children,

*Respondents*

---

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

---

**PER CURIAM**

At issue here is whether a Texas court may exercise personal jurisdiction over Hyundam Industrial Company, Ltd., a South Korean company that manufactures automobile parts. As we reaffirm today in *BRP-Rotax GmbH & Co. KG v. Shaik*, "a defendant [must] *specifically target* Texas" to be subject to personal jurisdiction; "it is not enough that a defendant may foresee some of its products' eventually arriving here." ___ S.W.3d ___, 2025 WL ___ (Tex. June 20, 2025). Because there is no

evidence Hyundam targeted Texas, we reverse the judgment of the court of appeals and render judgment dismissing the case against Hyundam.

**I**

Johari Powell suffered serious injuries when her 2009 Hyundai Elantra stalled in the center lane of traffic and was rear-ended. Powell alleges that the car stalled because its fuel pump failed. Paul Swacina, on behalf of Powell and her minor children, sued multiple defendants in Texas state court for various causes of action related to the car collision. This appeal concerns only defendant Hyundam, the manufacturer of the Elantra's fuel pump.

Hyundam filed a special appearance under Texas Rule of Civil Procedure 120a, requesting that the trial court dismiss the case against it for lack of personal jurisdiction. In support, it attached an affidavit by Jinwook Chang, Managing Director of the Technical R&D Center at Hyundam, explaining that Hyundam designed and manufactured the fuel pump in South Korea. Hyundam designed the fuel pump under Hyundai Motor Company's specifications and subject to its approval. Hyundam sold ninety-nine percent of its fuel pumps to Donghee Industries, Co., a South Korean company. Donghee then incorporated the fuel pumps into a fuel system in South Korea and sold the assembled fuel systems to Hyundai, also a South Korean company, which installed the fuel systems into the Elantra in South Korea. Chang stated that once Hyundam sold the fuel pumps to Donghee, it had no role in producing the Elantra. Hyundam sold the remaining one percent of fuel pumps to Hyundai Mobis Co. Ltd., a South Korean company. Mobis distributes service parts to Hyundai automobile dealers globally,

2

including in Texas, but Hyundam has no control over where Mobis sells its products.

Chang added that Hyundam:

- has never done or sought to do business in Texas;

- has no place of business, employees, or agents in Texas;

- does not advertise, market, export, or sell products in Texas; and

- has no control over where the Elantras containing the fuel pumps are sold or shipped.

Swacina responded to Hyundam's special appearance and presented evidence purporting to show that Hyundam was subject to personal jurisdiction in Texas: (1) Hyundam designed the fuel pump for the North American region and knew the fuel pumps were sold in Texas; (2) a replacement Hyundam fuel pump was purchased at a Hyundai dealership in Texas; (3) Hyundam maintains a website in English that is accessible in Texas and that says Hyundam has supplied Hyundai with fuel pumps since 1994; and (4) Hyundai sold over 97,000 Elantras in the United States in 2009.

Swacina also objected to Chang's affidavit and moved to strike it because, among other things, it was not based on Chang's personal knowledge. The trial court overruled Swacina's objections and denied the motion to strike. The court held a hearing on Hyundam's special appearance and ultimately denied it. Hyundam filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7).

The court of appeals affirmed. It held that the trial court did not abuse its discretion in overruling Swacina's objection to the affidavit. 692 S.W.3d 734, 745 (Tex. App.—Corpus Christi–Edinburg 2023). The

3

court further held that Hyundam purposefully availed itself of the privilege of doing business in Texas by designing its fuel pumps for the North American region. *Id.* at 749. It was "of no consequence" that the North American region includes markets other than Texas because "Hyundam need not 'single Texas out in some unique way to satisfy constitutional dictates.'" *Id.* (quoting *State v. Volkswagen Aktiengesellschaft*, 669 S.W.3d 399, 420 (Tex. 2023)).

This petition followed.

## II

### A

We first consider whether the trial court abused its discretion by overruling Swacina's objection to Chang's affidavit and denying his motion to strike the affidavit. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016) (stating that appellate courts review a trial court's evidentiary rulings for abuse of discretion).[1] It did not.

A trial court must "determine the special appearance on the basis of the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3).

---

[1] Swacina raised his personal-knowledge argument in his merits brief in this Court and not by cross-petition for review. Swacina's argument is not forfeited by his failure to file a cross-petition because he argues an alternative ground to affirm the court of appeals' judgment and does not seek to alter the judgment. *See* Tex. R. App. P. 53.1 ("A party who seeks to alter the court of appeals' judgment must file a petition for review."); *Dall./Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366 n.9 (Tex. 2019) (holding that Rule 53.1 does not require a cross-petition when a party raises an argument "as an alternative basis to support [the] judgment").

4

Any affidavit attached to a special appearance "shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." *Id.* To satisfy the personal-knowledge requirement, the "affiant must swear that the facts presented in the affidavit reflect his personal knowledge." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004). "An affiant's *belief* about the facts is legally insufficient." *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008).

Chang begins his affidavit by detailing the various roles he held during the seventeen years he worked at Hyundam and the knowledge he gained in each role. As Managing Director of the Technical R&D Center, Chang oversaw "product development for new vehicle models." Chang "routinely attend[ed]" business meetings in which he "obtained personal knowledge" about the fuel pump's "purchasers, product distribution chains, and quantities of the product being sold" and information about Hyundam's "revenues, sales[,] and marketing practices." Throughout the affidavit, Chang asserted that the "facts are within [his] personal knowledge as a result of [his] experience" at Hyundam.

An affiant's job responsibilities can give him personal knowledge of a company's operations and can establish how he learned of the facts asserted. *See Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553-54 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Merely stating that the facts are within the affiant's personal knowledge would be conclusory and insufficient to satisfy the personal-knowledge requirement. *See Ryland Grp. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).

But the affidavit here went further. Chang laid a foundation for his personal knowledge by detailing his extensive experience at Hyundam, the knowledge he obtained in each role, and the documents he reviewed to prepare his affidavit. Most relevant here, Chang obtained contracts for new vehicle models, learned the distribution chain of Hyundam's fuel pumps, and was privy to information on its sales and marketing practices.

Because the affidavit was sufficiently based on Chang's personal knowledge, the trial court did not abuse its discretion in overruling Swacina's objection and denying his motion to strike the affidavit.

**B**

We next consider whether Hyundam purposefully availed itself of the privilege of doing business in Texas such that it is subject to specific personal jurisdiction here. We hold that there is no evidence Hyundam targeted Texas, so it did not purposefully avail itself of the Texas market.

A Texas court may exercise specific personal jurisdiction when the defendant "purposefully avails itself of the privilege of conducting activities within the forum [s]tate" and "the plaintiff's claims 'arise out of or relate to' those forum contacts." *Volkswagen*, 669 S.W.3d at 412-13 (alteration in original) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). When considering whether the defendant purposefully availed itself of Texas, we consider "only the defendant's contacts with the forum . . . , not the unilateral activity of another party or a third person." *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). The defendant's contacts must be

6

"purposeful," not "random, fortuitous, or attenuated." *Id.* Further, the defendant "must seek some benefit, advantage[,] or profit by 'availing' itself of [Texas's] jurisdiction." *Id.* (quoting *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)).

To engage in purposeful availment, our precedent requires that the defendant undertake "some 'additional conduct'—beyond merely placing the product in the stream of commerce—that indicates 'an intent or purpose to serve the market in the forum [s]tate.'" *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010) (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion)). As we emphasize today in *BRP-Rotax*, "a key point is that mere awareness, or 'foreseeability,' of a product's sale or distribution in Texas 'alone' cannot 'create minimum contacts' sufficient to 'support personal jurisdiction.'" ___ S.W.3d at ___ (quoting *CSR Ltd. v. Link*, 925 S.W.2d 591, 595-96 (Tex. 1996)); *see also TV Azteca v. Ruiz*, 490 S.W.3d 29, 46 (Tex. 2016). The defendant must *target* Texas; it is not enough that the "defendant *merely foresees* [its] product ending up there." *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 13 (Tex. 2021) (emphasis added).

This dispute centers on Chang's deposition testimony that Hyundam "developed and delivered [its] products to satisfy specification for North America." Therefore, "Hyundam knew that Hyundai was selling vehicles with fuel modules built by Hyundam and they were being sold in North America," which, Chang admitted, includes Texas. Swacina argues that designing the fuel pump for North American

7

specifications constitutes additional conduct targeting Texas. We disagree.

Designing a product for a region that includes Texas makes it foreseeable that the product will end up in Texas. But the fact that Hyundam designed the fuel pump for North America and knew that it was sold in Texas does not, by itself, constitute additional conduct targeting Texas. It is the defendant's purposeful contacts with Texas—not a larger region in which Texas sits—that are relevant to our personal-jurisdiction inquiry. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885-86 (2011) (plurality opinion). Hyundam did not design the fuel pump for Texas but rather, for the expansive North American region which contains the United States' fifty states and twenty-two other countries. Hyundam had no control over where vehicles containing its fuel pumps were sold. Further, Hyundam has never sought to do business in Texas; maintains no offices, employees, or agents in Texas; and does not advertise, market, or sell its products in Texas.

This case is like *BRP-Rotax*, in which we rejected the argument that a defendant's desire to serve a large region including Texas was evidence of the defendant's purposeful availment of Texas. ___ S.W.3d at ___. There, a distribution agreement between the defendant and a third party required the third party to advertise and sell the defendant's product in a territory that spanned two large continents and included Texas. *Id.* Here too, Hyundam's designing the fuel pump for the entire North American region "expresses no view, much less any command, about whether any business at all will be transacted in Texas." *Id.*; *see*

8

*also Nicastro*, 564 U.S. at 886 (plurality opinion) (holding that a foreign manufacturer had not purposefully availed itself of New Jersey despite its intent to serve the entire United States market). Hyundam's manufacturing the fuel pump for North American specifications makes it foreseeable that some of its products would end up in Texas. But the mere foreseeability or awareness that a product may be sold in Texas, standing alone, is insufficient to subject a defendant to personal jurisdiction in Texas. *CSR*, 925 S.W.2d at 595-96.

This case is unlike *Volkswagen*, in which the defendants purposefully availed themselves of every market in which their vehicles were present, including Texas, by initiating recall and service campaigns. 669 S.W.3d at 420, 424. "[B]ecause 'personal jurisdiction requires a forum-by-forum' analysis, we look[ed] only to the [defendants'] behavior directed toward Texas, not their behavior directed elsewhere." *Id.* at 420 (quoting *Nicastro*, 564 U.S. at 884 (plurality opinion)). As we explained, the fact that the defendants similarly targeted other forums did not negate their purposeful availment of Texas:

> The defendant need not single Texas out in some unique way to satisfy constitutional dictates. To hold that a nonresident who has directed activity to *every* state is not amenable to jurisdiction in *any* state would unduly constrain the authority of state courts to hold nonresidents accountable for their in-state conduct and would convert the specific-personal-jurisdiction analysis into a wholly subjective inquiry into the defendants' state of mind.

*Id.* The defendants' targeting of every forum in which their products were located (including Texas) could not mean that they targeted no forum. Only after concluding that the defendants targeted Texas was it

9

necessary for the Court to explain that they "need[ed] not" target Texas "in some unique way" from the other forums they targeted to be subject to personal jurisdiction in Texas. *Id.*

The court of appeals below misapplied *Volkswagen* by stating that "Hyundam need not 'single Texas out in some unique way to satisfy constitutional dictates.'" 692 S.W.3d at 749 (quoting *Volkswagen*, 669 S.W.3d at 420). The court of appeals took *Volkswagen* to mean that a defendant may be subject to personal jurisdiction in Texas if the defendant merely targets a general region that includes Texas. Such a reading flies in the face of our explanation that "the critical inquiry is whether a nonresident defendant has established sufficient contacts with *Texas*—not whether those contacts are materially different from its contacts with other states." *Volkswagen*, 669 S.W.3d at 421 (emphasis added). Unlike in *Volkswagen*, there is no evidence that Hyundam targeted Texas, so our inquiry ends there. *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013) (stating that courts look only to the defendant's contacts with Texas).

To be sure, we are not suggesting that a foreign manufacturer must design its products specifically for Texas to purposefully avail itself of the Texas market. But a foreign manufacturer must engage in some conduct targeting Texas. Hyundam's designing the fuel pump for a general region with no specific targeting of Texas does not clear that bar.

Nor do Swacina's three other pieces of evidence show that Hyundam targeted Texas. First, Swacina presented evidence that one of Hyundam's fuel pumps was purchased in Texas. Chang explained in his affidavit that Hyundam sold less than one percent of its fuel pumps

10

to Mobis, a South Korean company that distributes service parts to Hyundai dealerships. Hyundam had no control over where Mobis distributed the fuel pumps. The replacement fuel pump was purchased from Hub Hyundai, a franchised Hyundai dealership—not from Hyundam. Swacina does not explain how Hub Hyundai obtained the fuel pump—be it from Mobis, Hyundai, or Hyundam. Nor is there any evidence that Hyundam had a distribution agreement with any company in the United States, let alone in Texas. *See Asahi*, 480 U.S. at 112 (plurality opinion) (stating that "[a]dditional conduct" targeting the forum may include "marketing the product through a distributor who has agreed to serve as the sales agent in the forum [s]tate"). The mere fact that a fuel pump was purchased in Texas is insufficient to show that Hyundam acted through an agent or intermediary to intentionally target Texas.

Second, evidence that Hyundam maintains a website in English, without more, fails to show that Hyundam targeted Texas. "If any website's mere use of English illustrates an attempt to target Texas specifically—as opposed to the other jurisdictions within our nation and across the world that primarily speak English—then the work of the Texas courts should be expected to grow by massive proportions." *BRP-Rotax*, ___ S.W.3d at ___.

Third, evidence of Hyundai's Elantra sales is legally insufficient to show that Hyundam targeted Texas. We do not consider the unilateral activity of Hyundai, a third party, in assessing Hyundam's contacts with Texas. *See Moncrief Oil*, 414 S.W.3d at 151. In all, the evidence shows no more than that the "stream [of commerce] eventually

11

swept [Hyundam's] product into" Texas despite Hyundam doing "nothing else to purposefully avail itself of the [Texas] market." *See Asahi*, 480 U.S. at 110 (plurality opinion).

### III

As in *BRP-Rotax*, our decision today "break[s] no new jurisprudential ground." ___ S.W.3d at ___. Hyundam's awareness that its product may end up in Texas is not, standing alone, sufficient to subject it to personal jurisdiction in our courts. Without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant Hyundam's petition for review, reverse the judgment of the court of appeals, and render judgment dismissing the case against Hyundam.

**OPINION DELIVERED:** June 20, 2025

12